**TEXAS & NEW ORLEANS RAILROAD COMPANY, Appellant,**

v.

**L. B. JACKS, Appellee.**

No. 6130.

Court of Civil Appeals of Texas.

Beaumont.

Oct. 24, 1957.

Rehearing Denied Nov. 20, 1957.

Keith, Mehaffy, McNicholas & Weber, Beaumont, for appellant.

Jacobs & Schmidt, Houston, for appellee.

R. L. MURRAY, Chief Justice.

Appellee Jacks sued appellant Texas & New Orleans Railroad Company for damages for injuries suffered by him in a fall from a moving railroad car while he was working as an employee of the appellant. He sued under the provisions of the Federal Employers Liability Act, (Sec. 51, Title 45 U.S.C.A.) as supplemented by the Safety Appliance Act (Sec. 4, Title 45 U.S. C.A.) On the day when the cause went to trial the appellant filed an instrument admitting pertinent facts showing liability of the appellant to the appellee, and the cause was tried before a jury upon the sole issue of fact as to the amount of monetary damages suffered by the appellee in the premises. In his petition the appellee sought damages in excess of $144,000. The jury by its verdict found that he had suffered damages in the sum of $81,000.

Judgment was rendered and entered in behalf of appellee and against the appellant for the sum of $81,000. The appellant filed its motion for new trial and amended motion for new trial, which amended motion was overruled by the trial court. The appellant has duly perfected its appeal to

this court and brings its appeal under five points of error. Such points read as follows:

### First Point

The trial court erred in forcing the defendant to trial when the jury panel from which the parties were required to select a jury had been depleted by unauthorized excuses by divers persons, thereby subjecting the defendant to a trial by a jury not selected in accordance with law.

### Second Point

The court erred in refusing to permit the defendant to elicit from plaintiff the fact that he was not willing to relinquish his re-employment rights with the defendant notwithstanding his claim of total and permanent disability.

### Third Point

The court erred in permitting the plaintiff to establish the cost to plaintiff of a single-premium annuity over the objection of the defendant.

### Fourth Point

The trial court erred in refusing to grant the defendant a new trial because of the improper and inflammatory argument of plaintiff's counsel.

### Fifth Point

The trial court erred in refusing to grant the defendant a new trial because the verdict of the jury was excessive under the circumstances.

The basis of appellant's first point is the action of the trial court in overruling its motion to quash the jury panel. Such motion alleged in substance as follows:

There were selected from the jury wheel of this county, the names of 200 persons who were each summoned to do jury service in the District Courts of Jefferson County, Texas, for the week beginning October 15, 1956; of said number 69 swore in as jurors available for service in all of the courts of this county for said week. This defendant says that the list submitted to it from which it must select a jury in this cause was not drawn in accordance with the applicable statutes and rules governing the selection and empanelment of juries in this county as will be shown hereinafter.

Defendant verily believes that many persons were excused from attendance by an unauthorized person: namely the sheriff of Jefferson County, Texas, or his deputies. In support of this allegation, the defendant says that it verily believes that the following persons were excused from attendance upon this court by said sheriff: (Here follow the names of eight persons, together with the numbers by which they appeared on the jury panel list for the week).

The motion next alleged that numerous other jurors were excused by divers and sundry persons without lawful excuse and alleged the names and numbers of 85 persons alleged to have been wrongfully excused.

Appellant further alleged as follows:

In the alternative, and in the event the proof does not establish that some unauthorized person excused each of the jurors named in the foregoing paragraph, then and in such event, defendant says that said persons were lawfully summoned for jury service and did not appear and no process was issued to compel their attendance; and by reason of such facts, the same amounts to an unauthorized excuse of said jurors.

Still further—this defendant says that at the time the court empaneled said jury for the week, 24 jurors were excused and many without lawful excuse, and upon this point defendant proffers testimony to show that there has been an abuse of discretion in the release of said jurors from service.

This defendant says that it is entitled to a jury selected in accordance with law and is entitled to have a panel selected at random from all of the jurors summoned for the week from the jury wheel; that of

202 names upon the list, only 69 were sworn as jurors to try causes, 131 being excused for one or another reason; that the remaining jurors were truly and in fact volunteer jurors.

Wherefore, premises considered, defendant prays that the said panel be quashed; or in the alternative, that the absent jurors and those without lawful excuse be brought before this court and their qualifications tested in accordance with law and that this defendant be afforded a panel of qualified jurors who have not been arbitrarily and unreasonably excused from service.

This motion was verified by affidavit of counsel and the court heard extensive evidence upon the motion. From such evidence it was adduced that the names of 200 persons had been drawn from the jury wheel for service as petit jurors for the week beginning October 15, 1956, and that only 69 were actually sworn in as jurors available for service in the courts of Jefferson County for that week. Many prospective jurors whose names were drawn were excused by the sheriff, and others were excused by the clerk, many were not excused and did not appear, and others were excused by the presiding judge when the jury for the week was empaneled. The prospective jurors appeared before a district judge other than the one presiding in the district court where the instant case was tried.

The appellant complains in its motion for new trial and in its brief here of the fact that some 66 jurors were excused prior to appearance before the court and not one of them filed affidavits of exemption. It complains that no authority has been found authorizing the sheriff or district clerk to excuse jurors from service, and complaint is also made of the refusal of the trial court to enforce obedience to the summons upon the persons whose names were drawn but who ignored the processes of the court. Appellant contends that it was thus confronted with a voluntary jury and was deprived of its right to have all the prospective jurors available from which to strike its list in selecting a jury to try its case.

■ It is clear from the holding in Ulmer v. Mackey, Tex.Civ.App., 242 S.W.2d 679, and from the statutes regulating the selection of persons for jury service, that the district clerk and sheriff are without lawful authority to excuse jurors. Such a holding, however, does not answer the question involved in this point of the appellant, that is, whether the appellant was entitled to the relief which it sought from the trial court in its motion to quash the jury panel and whether the trial court's action in overruling such motion to quash constitutes reversible error.

The courts of Jefferson County operate under the provisions of the Interchangeable Jury Law, Art. 2101, Vernon's Annotated Civil Statutes. Such statute provides that a majority of the district judges are authorized to act in carrying out the provisions of this law; they may increase or diminish the number of jurors selected for any week, and shall order said jurors drawn for as many weeks in advance of service as they deem proper. *From time to time they shall designate the judge to whom the jury panel shall report for duty, and said judge, for such time as he is chosen to so act, shall organize said juries and have immediate supervision and control of them. The said jurors so limited in number shall, after being regularly drawn from the wheel, be served by the sheriff to appear and report for jury service before said judge so designated, who shall hear the excuses of said jurors and swear them in for service for the week that they are to serve to try all cases that may be submitted to them in any of said courts.* Said jurors, when empaneled, shall constitute a general panel for the week, for service as jurors in all county and district courts in said county, and shall be used interchangeably in all of the said courts.

■ We believe that under the above statute the district judge designated as the

one to whom the general jury panel shall report for duty is charged with the duty and clothed with the authority to organize the jury for the week. Any objection to the organization of the jury panel for the week should be made to him at the time he makes such organization.

The jury wheel law has no clause to the effect that failure to comply with any of its provisions shall be cause for challenge to the array, and we must look to the former law for the rule on that subject, which is found in Article 3202, Rev. St.1895. Freeman v. McElroy, Tex.Civ. App., 149 S.W. 428. This is now Rule 221, Texas Rules of Civil Procedure. This rule simply provides that when jurors are summoned who have not been selected by jury commissioners or by drawing the names from a jury wheel, any party to a suit which is to be tried by a jury may, before the jury is drawn, challenge the array upon the ground that the officer summoning the jury has acted corruptly, and has willfully summoned jurors known to be prejudiced against the party challenging or biased in favor of the adverse party. This rule obviously has no application here, since the names of the jurors were drawn from the jury wheel and there is no charge that any officer concerned acted corruptly.

We are of the opinion that the appellant here has not shown itself to have been in position to seek the relief sought by its motion to quash the jury panel after the jury for the week had been organized by one of the district judges of Jefferson County other than the one who sat in the trial of this case, and after the panel of 31 eligible jurors were sent to this district court as a panel of jurors for trial of cases in this court. Such objections and requests as the appellant made here in its motion to quash are required to be made before the judge designated to organize and empanel the jury for the week. The language of the statute, while not saying so specifically, contemplates that all matters relating to the organization of the jury for the week for

the courts of the county shall be presented to the one district judge before whom the jurors report for service and before whom excuses and qualifications of the jurors are determined. When he has heard and passed upon the excuses and qualifications of the jurors, and has organized and empaneled the jury for the week, the jury for the week has been organized, and no attack upon such organization can be made thereafter. The words, "Said jurors when impaneled shall constitute a general panel for the week", appear to give authority for such view and holding. Appellant's first point presents no reversible error and it is overruled.

The appellant's second point deals with the action of the trial court in sustaining an objection by appellee's counsel to a question asked appellee while a witness on the trial of the case. The appellee had testified as to his injuries and his physical condition at the time of the trial and the following cross-examination took place:

"Q. As I understand your testimony here you do not believe that you could ever return to work as a brakeman or switchman? A. No, sir. I am afraid not.

"Q. Well, are you now willing to relinquish your seniority rights?

"Mr. Schmidt: We object to that, your Honor, it is not in the lawsuit.

"The Court: The objection is sustained.

"Mr. Keith: Note our exception.

"Q. Do you expect to return to work for the railroad? A. I don't think—I won't get able. I won't get where I can.

"Q. Is it your testimony that you never expect to return to work for the railroad in any capacity? A. Not unless I get better than I am."

Under this point appellant says that it was thus denied the right to elicit from the appellee himself the fact that notwithstanding his condition and his contention that he was totally and permanently dis-

abled from doing his usual and customary work, he would not relinquish his seniority and re-employment rights with the appellant. It argues that had the court permitted him to secure an answer from the appellee that he was not willing to give up his seniority and re-employment rights with the railroad, it could have argued to the jury that such unwillingness meant that the appellee himself did not in truth and in fact believe that he was totally and permanently disabled. It says that this was a legitimate cross examination, since it included a relevant fact and points out that our courts permit a wide latitude in cross-examination. It cites and relies upon Radford v. Hill, Tex.Civ.App., 185 S.W.2d 129 and Texas & N. O. Railroad Co. v. Barham, Tex.Civ.App., 204 S.W.2d 205. In appellee's reply to this argument it is noted that he nowhere in his pleadings alleged that he was totally and permanently disabled and that there is no testimony of any witness that appellee is totally and permanently disabled.

■ There is no showing by a bill of exception or otherwise what the answer of the witness would have been if the trial court had permitted him to answer the question. Where such a ruling excludes evidence it must be shown what the proffered evidence is or what the expected answer of the witness would have been. McCormick & Ray, Texas Law of Evidence, Second Edition, Vol. 1, Sec. 32, citing Johnson v. Poe, Tex.Civ.App., 210 S.W.2d 264; Texas Associates v. Joe Bland Construction Co., Tex.Civ.App., 222 S.W.2d 413; Bradford v. Magnolia Pipe Line Co., Tex. Civ.App., 262 S.W.2d 242.

■ In the absence of such a showing of what the answer of the witness would have been, this point presents no error and it is overruled. If it be assumed, however, that the witness would have given a negative answer to the question, we do not believe that the trial court erred in sustaining the objection of the appellee. The

seniority rights of the appellee with his employer are not inherent in the employment relationship, but arise out of and exist only by reason of contract. Trailmobile Co. v. Whirls, 331 U.S. 40, 67 S.Ct. 982, 91 L.Ed. 1328, and cases cited. It appears to be immaterial to any issue in this case, whether appellee's disability is permanent or not, whether he was willing to forego his seniority rights, speculative and uncertain though their value may be.

Under its third point the appellant complains of the trial court's action in permitting appellee to establish by evidence the cost to him of a single-premium annuity. A local insurance agent testified from mortality tables that life expectancy of a white male, age 48 years was 22.88 years, while that of a 47 year old white male would be 23.65 years. Appellee was 47 years old at the time of the trial. No objection was made to such testimony. Following this question, however, the following question was asked and objection made by appellant:

"Q. All right. Now, Mr. Quartararo, can you state, or can you tell me the cost of an annuity policy with your Company (Pan American Life Insurance Company) a one-payment annuity policy that would pay the insured, or guarantee him, or pay him for a period of twenty-two (22) years the sum of $400.00 per month? Can you tell me the cost of such a one-premium policy?

"Mr. Keith: We would have objection, if the Court please, that is not a proper element of damage, it is speculative as to that this particular company would sell any individual a particular policy is not the controlling factor, and isn't even persuasive in this, there is no showing that is the common, the usual or ordinary charge, there are not other companies would sell it for less, and for the additional reason the life insurance companies

are prohibited by law to pay an interest rate comparable to the going rate for money.

My additional objection is the evidence does not show that the man is totally and permanently disabled, under the testimony of Dr. McGee.

My additional objection for the additional reason that the testimony in this case most favorably considered from the plaintiff's standpoint does not indicate that the plaintiff will be totally and permanently disabled from the effects of the alleged injury, but on the contrary a reasonably simple operation would result not only in partial disability but consequently the value of an annuity predicated upon a complete or total loss of earning capacity would not be supported by any competent evidence in this record."

■ The objection was overruled and the witness testified that as to a single-premium annuity it would cost $2,098 for each $10 per month income; that an income of $400 per month would be roughly $84,000; that the cost to guarantee him $100 per month would be $21,000; $200 per month $42,000; a guarantee of $300 per month, $63,000 and that to guarantee him $500 it would cost him $105,000. The appellant's objections to such testimony are summarized by it in its brief, as follows: (a) It is not a proper element of damage; (b) it is speculative as to what this particular company would sell any individual a particular policy; (c) there is no showing that it is a common, usual or ordinary charge; (d) it is not based upon an interest rate comparable to the going rate for money; (e) it assumes total and permanent disability. The witness's annuity was based upon a discount rate of 2½ per cent, while government bonds were then paying 3 per cent. Another witness testified that the safe interest rate in Jefferson County, Texas was 3 per cent and added that he could loan money at better than 6 per cent in investments considered safe. This witness also testified that a reasonably prudent investor, seeking neither the maximum return or the maximum safety could invest his money then in Jefferson County at a rate in excess of 5 per cent. Standard Life & Annuity tables and the present cost of a life annuity are competent evidence to assist the jury in making an estimate of a plaintiff's loss and damage in money as a fair recompense for the loss of what would otherwise have earned in his trade or profession and has been deprived of the capacity of earning. Vicksburg & Meridian Railway Co. v. Israel Putnam, 118 U.S. 545, 7 S.Ct. 1, 30 L.Ed. 257, and cases cited; Southern Pacific Co. v. Klinge, 10 Cir., 65 F.2d 85. From these authorities it is clear that the testimony complained of was admissible. The evidence and objections in regard to discount rates and prevailing rates of interest in Jefferson County do not affect the admissibility of this evidence, but are for consideration by the jury in deciding upon the weight to be given such other evidence as to cost of the annuity. This point presents no error and it is overruled.

■■ By its fourth point the appellant complains of argument of appellee's counsel in addressing the jury, and says such argument was improper and inflammatory. The portions of the argument complained of were as follows:

"Again, I want to thank you for your kindness, your attention you gave to Mr. Keith the same attention you gave to me, and I appreciate it particularly because you could see the palpable shame of a man that will stand before you and prate of fairness and at the same time indicate how grossly unfair he is * * *"

"* * * And you talk about fairness, and he misrepresents everything he can possibly misrepresent to you * * *"

"* * * but when you fix it so that damages will be awarded to him

will take him off the relief rolls, and take him and put him where he can have at least the courage to face his fellow man and say, 'I am not a charge on public charity' * * * "

This point presents no error. The first portion of the argument complained of by appellant was made without objection on the part of appellant and it does not appear to be such a vicious and violent attack upon counsel that it could not have been corrected by the trial judge if an objection had been made. The evil in the argument, if any, could have been corrected by an instruction from the court. J. D. Wright & Son Truck Line v. Chandler, Tex.Civ.App., 231 S.W.2d 786; Ramirez v. Acker, 134 Tex. 647, 138 S.W.2d 1054 and cases cited; Wade v. Texas Employers Ins. Ass'n, 150 Tex. 557, 244 S.W.2d 197.

As to the other two portions of the argument complained of, the trial court sustained objections and instructed the jury to disregard the quoted portions of the argument. As we view it, such an instruction by the court cured whatever error there was in making such argument. See King v. Federal Underwriters Exchange, 144 Tex. 531, 191 S.W.2d 855; Lumberman's Lloyds v. Loper, Tex., 269 S.W.2d 367.

Appellant's fifth point complains that the jury's verdict and the court's judgment in the sum of $81,000 was excessive.

 The amount of the judgment is large and because of the size of the judgment it is necessary to set out a summary of the evidence adduced. Appellee was 45 years old at the time of his injuries and had worked for the appellant for over 22 years. He was a brakeman and had been promoted to conductor in 1948, from which time he worked as brakeman and extra conductor. His earnings prior to the injuries were for 1952, $6,284.15; 1953, $5,944.60; 1954, $5,289.30. He had a life expectancy of 22.88 years at the time of the trial. When he fell from the moving freight car and was injured, he suffered bruises on his left elbow, right knee and leg, a knot on his head and skinned places on his leg. His spine was injured and after treatment at Southern Pacific hospital in Houston he has worn a brace all the time. His use of his legs and back is greatly restricted and he is in continuous pain and nervousness. He has a ruptured disc in his back and a mild curvature of the lumbar section of his spine. There are subluxations in the lower part of his spine, particularly between the fifth lumbar vertebra and the sacrum. This condition of the spine could probably be cured or improved by a major surgical operation, in which two discs of the spine would be removed and three joints in the back would be fused, either with bone from the patient himself or from a bone bank, or with the use of a metal plate. He will be unable to do hard work for a long time.

He has lost approximately two years wages up to the time of trial. We are unable to say that under the evidence the allowance made by the jury in its verdict and incorporated in the judgment of the court was excessive. We have read the case of Thompson v. Barnes, Tex.Civ.App., 236 S.W.2d 656 and a number of the later cases cited by both parties here. The Barnes case holds a judgment of $85,000 for the injuries to a railroad conductor is not excessive. It cites in the opinion numerous other cases relied upon by the appellee in his brief here, sustaining large judgments for personal injuries. We have also examined numerous authorities set out in 16 A.L.R.2d in the annotation running from Page 3 to Page 458, and from all the authorities read and examined we see again the observance of the general rule in such matters that the amount of damages to be awarded for personal injuries is primarily a question of fact for determination by the jury and the courts will not interfere to set aside or reduce such judgments and

verdicts when they have support in the evidence, in the absence of any showing of bias, passion or prejudice.

In the instant case the jury had before it evidence of loss of wages at the time of trial, the probable loss of wages for a number of years to come, and extensive pain and suffering on the part of the appellee. We are unable to agree with the contention of the appellant that the amount of the judgment is out of proportion to the damages and injuries shown by the evidence and the appellant's fifth point is overruled.

We find no error presented and the judgment is accordingly affirmed.