**LOUISIANA & ARKANSAS RAILWAY COMPANY, Appellant,**

v.

**J. C. MULLINS, Jr., Appellee.**

No. 7110.

Court of Civil Appeals of Texas.

Texarkana.

June 16, 1959.

O. O. Touchstone, Dallas, Grover Sellers, Sulphur Springs, for appellant.

Jones, Brian & Jones, Marshall, Joe N. Chapman, Sulphur Springs, for appellee.

CHADICK, Chief Justice.

After consideration of appellant's motion for rehearing, the opinion dated April 14, 1959, is withdrawn in order to make certain minor deletions and express the views of the court in more apt language, and the following is substituted therefor.

This is an action authorized by the Federal Employers' Liability Act, Title 45 U.S.C.A. § 51 et seq., by a railroad engineer to recover damages resulting from injuries received in a train collision. The judgment of the trial court is affirmed.

In the 8th Judicial District Court of Hopkins County, appellee, J. C. Mullins, Jr., as plaintiff sought a recovery in the aggregate sum of $282,150 against appellant, Louisiana & Arkansas Railway Company as defendant. The Railroad Company admitted liability. Trial to a jury on the issues of damages alone resulted in a judgment in favor of appellee in the sum of $150,000. The judgment in its entirety is the subject matter of this appeal.

Twenty-three points of error have been briefed by the appellant. To condense the brief the points were grouped. Consideration of the questions presented by the points will follow the appellant's grouping, and minimum discussion of the questions and authorities will be made in the interest of brevity.

Counsel for Mullins submitted a question by written interrogatory to an actuary that contained this wording: " * * * will you please figure for us the amount of a single premium necessary for the purchase of a refund annuity which would provide an annual income during the expectancy of life that, etc. * * * " Appellant objected to the question containing the quoted language and was overruled. Thereafter appellant moved to strike the answer to the question containing the quoted language as well as certain other answers and exhibits of the actuary when they were tendered in evidence. The contention made is that the calculations of the actuary were erroneous because the Federal Employers' Liability Act did not permit the introduction in evidence of a single premium refund annuity formula in determining the present cash value of future earnings lost by reason of appellee's decreased ability to earn resulting from injuries for which appellant is liable.

Appellant's objection appears to be well taken under Bartlebaugh v. Pennsylvania Rd. Co., 150 Ohio St. 387, 82 N.E.2d

853, if the facts and circumstances of the present case bring it within the purview of that case. Examination of the evidence reveals that the deponent Gammill testified that "a refund annuity as used in the case of this problem means an annuity which would be payable over the life expectancy period of the annuitant, at the end of which period the principal amount invested or single premium, with interest allowed on remainder invested at the rate of 2½% per annum, compounded annually, would be exhausted." He further testified that his computations of a single premium for the annuities inquired about were made on the assumption that the amount paid in as well as the interest earned would both be exhausted at the end of the life expectancy of J. C. Mullins. The term "refund annuity" was not defined in the instructions to the jury, nor was the jury advised that the term had any special meaning or a meaning different from that given it by Gammill in his deposition. The term "refund annuity" is not shown by this record to have a special meaning or significance apart from the word "annuity." Under this record there is no showing of any harm that befell the appellant by reason of the use of that term. Any error in the use of "refund annuity" in the interrogation is harmless and under Rule 434, Vernon's Annotated Texas Rules of Civil Procedure, judgment cannot be reversed for that reason.

The actuary in response to the question containing the language first quoted and to several related questions, assumed Mullins to be 41 years of age at the date from which payments would be made; then using the Commissioners 1941 Standard Ordinary Mortality Table showing a life expectancy of 28.43 years and a rate of interest of 2½% per annum, compounded annually, he computed various specified monthly payments on a single premium basis. He testified that a single premium of $126,881.62 would produce a monthly income of $517 over the term of Mullins' life expectancy; that $132,526.26 would produce $540.00 per month; $141,115.93 would produce $575 per month; $147,251.40 would produce $600 per month; and $153,386.88 would produce $625 per month. In addition, with his answers there was tendered three exhibits explaining his calculations.

■ It is concluded that no error is shown and this testimony and the exhibits made in explanation of it are admissible under authority of Vicksburg & Meridian R. Co. v. Putnam, 118 U.S. 545, 7 S.Ct. 1, 30 L.Ed. 257; Chesapeake & O. Ry. Co. v. Kelly, 241 U.S. 485, 36 S.Ct. 630, 60 L.Ed. 1117; Houston & T. C. R. Co. v. Willie, 53 Tex. 318; Texas & N. O. R. Co. v. Jacks, Tex.Civ.App., 306 S.W.2d 790, wr. ref., n. r. e.; Missouri, K. & T. R. Co. v. Wright, Tex.Civ.App., 311 S.W.2d 440, wr. dis. by agreement.

The trial court's admission in evidence of testimony of appellee's attitude toward his wife and 13-year-old daughter, his emotional changes and violence toward his wife before and after injury are the subject of the next group of points. Evidence was admitted that from an indulgent, thoughtful, forbearing and kindly disposition towards his wife and daughter, he changed after injury to a harsh, tyrannical and domineering husband and father. And that prior to injury he never struck his wife, but did on one occasion afterwards. In connection with this last incident, Mullins' hospital chart, introduced into evidence without objection, recited: " * * * Patient suddenly upset, fighting, slapped wife and nurse several times before controlled." The wife as a witness testified that Mullins had never slapped her before the injury. To this testimony objection was made, the court sustained it, and instructed the jury not to consider the answer. The wife testified that prior to his injury she had never heard Mullins cry, but after injury he cried on occasion. Appellant views all of this testimony as being adduced to support issues which could not properly be raised in the lawsuit. In other words, that loss of love, affection and grief are not elements of damages under the FELA nor is the wife and daughter's loss and suffering compensable.

The appellant says the consequence of this testimony is to inject illegal, speculative and remote elements of damage that are not recoverable. And it contends that the admonitory instructions could not remove the inflammatory and prejudicial effect of the testimony regarding Mullins' not striking his wife prior to injury. The evidence regarded as a whole, it asserts, was so harmful, inflammatory and prejudicial that an instruction to limit the jury's consideration of it would not remove its ill effect and therefore no instruction to limit the purpose for which the evidence might be considered was requested.

█ In the trial court and here the appellee's stated reason for offering the testimony was to show a personality change resulting from Mullins' injury. Evidence was tendered raising an issue of a brain injury to Mullins and expert testimony was adduced to show that personality changes, that is, changes in temperament, disposition and nature, are symptomatic of brain injury. The testimony is admissible under authority of McGrew v. St. Louis, S. F. & T. R. Co., 32 Tex.Civ.App. 265, 74 S.W. 816, wr. dis., w. o. j.; Gulf, C. & S. F. R. Co. v. Moore, 28 Tex.Civ.App. 603, 68 S. W. 559; Western Union Telegraph Co. v. Simmons, 32 Tex.Civ.App. 578, 75 S.W. 822, n. w. h.; Title, Damage, 13 Tex.Jur., Sec. 85, p. 183, Sec. 87 pp. 185–186. ·

█ The instruction to the jury made harmless any error that could have adhered to the admission of the testimony that Mullins did not strike his wife before his injury. Such testimony at most is immaterial and neither it nor the other testimony considered in this group of points is shown to be of such harmful nature as to require a reversal.

█ The wife of the appellee under direct examination was testifying as to her husband's condition when she first saw him at the hospital and related the length of time after seeing him before there was any indication that he was alive. She testified that she first observed a sign of life when he moved one eyelid. Her counsel then asked if appellee had been moved out of the room up until that time, and her reply was: "No, sir; they wouldn't even clean him up." Counsel then asked how long it was before Mullins was cleaned up. Objection was made that any answer to their last question would be irrelevant, immaterial, prejudicial and inflammatory, and motion made to instruct the jury to disregard it, the objection was sustained and no answer given, and the jury was instructed not to consider the question asked. Also grouped with the points bringing for review the action of the court in connection with the testimony just related is a point regarding testimony given by the wife that she and appellee no longer had a farm that they owned at the time of the collision. This testimony was withdrawn from the consideration of the jury after objection and on motion by appellant's counsel. The third point in this group is that the accumulated prejudicial and harmful effect of this inadmissible evidence along with the testimony considered in the previous group of points was such that the defendant's right to a fair trial was completely destroyed. The contention of appellant cannot be sustained. No motion to declare a mistrial was made and the instruction requested was given by the court. It seems to be well settled that if error was committed in posing such questions, and the answers in evidence, it was cured by the instructions and admonition of the court. See Title, Trial—Civil Cases, 41–B Tex. Jur., Sec. 128, p. 156; Sec. 168, p. 197.

The next grouping requires a review of argument which it is asserted was improper and reasonably calculated to cause and probably did cause the rendition of an improper verdict and the entry of an erroneous judgment thereon, and was out of the record and so prejudicially inflammatory that its effect as a whole could not be removed by objections and admonitory instructions.

It is not feasible to reproduce a verbatim statement of the argument under attack and

the record or remarks of opposing counsel which are said to justify the argument. An attempt will be made to synopsize a sufficient amount of the argument to indicate its extent and burden. It is realized that such presentation can not be entirely satisfactory to the parties as it will not emphasize all possible aspects of the argument. Counsel on both sides used illustrations extensively in their argument. Appellant's counsel with reference to the amount of $287,000 sued for pointed out that at $100 an acre it would purchase 28,700 acres of land. Also that $100,000 would buy 10 brick buildings in Sulphur Springs, or 20 to 25 residences. It was stated that such a recovery would make the appellee a capitalist as $100,000 would be the capital stock of two banks at $100 per share. A suggestion was made that if the appellee had received a similar injury in a head-on collision between two trucks owned by a farmer in Hopkins County, neither counsel nor the appellee would come into court asserting damages in the amount sought from the Railroad Company on pain of being laughed out of court. The inimical effect of the give-away television programs was alluded to with an implication that judgments of the nature sought would bankrupt the railroads and that juries should be careful with other people's money. The fair and honorable attitude of the Railroad in admitting its responsibility for the unfortunate collision and its reasonable and just intention to pay for the damage Mullins suffered was given emphasis. The Railroad's counsel cast upon appellee the odium of asking a jury to do an unconscionable thing by awarding him the amount he sued for. The plaintiff's posture in the suit was charged to be neither fair nor reasonable and the jury was exhorted to be impartial and treat the Railroad as it would a farmer in the illustration counsel had used.

Counsel for appellee, referring to local counsel's argument that the jury should reduce appellee's damage claim, acknowledged the quality of cattle raised by such counsel and stated that he had heard a ru-mor that a short time previously counsel had sold a Jersey bull for $10,000. Objection was made and the jury instructed not to consider appellee's counsel's statement for any purpose. Appellee's counsel then continued with his illustration and impersonalized it by referring to any $10,000 bull and asserting that if it was killed in an accident the jury would be willing to award the owner full damages. In a variation of the theme, another of appellee's counsel offered the supposition that the farmer in the illustration who had the two trucks in collision was the one owning the 28,000 acres or the $10,000 bull that had been mentioned.

Perhaps of more serious import, counsel for appellee asserted in his argument that appellant would have a jury tell the appellee to get a broom handle and pick paper off the school grounds for a living and deprive appellee's daughter of a college education and the appellee of the livelihood to which he was accustomed. At another point appellee's attorney asserted that he did not mind being called unconscionably unfair if his accusers would omit platitudes and glorification of the jury system and say how much they thought the appellee had been damaged in dollars and cents, ending with this language; carrying the implication that the Railroad was saying to the jury: "Oh, we won't do the dirty work of cutting these figures down, you do the dirty work for us, we won't do, no, we won't dare tell you what we think is a proper amount." Objection was made to the argument as prejudicial and inflammatory which was sustained and the jury admonished not to consider it. In other argument counsel for appellee referred to certain elements of the damages being sought as having a niggardly value placed upon them for the purpose of illustration and proceeded to make calculations involving hours of suffering, and compensation therefor at the rate of $10 per hour as well as the same type of argument with reference to days and years of disability and its value by the day; and then giving a resume of his version of the

testimony of the various doctors who had testified which appellant claims was inaccurate and not supported by the record. Appellee's counsel repeated a Mark Twain joke which, among other things, illustrates that humor has little place in the court room, and made some reference to his version of the Creator's modus operandi with respect to death and punishment. Other remarks made in the course of an oratorical peroration are also within the scope of this group of points.

■■ Except as indicated, the argument was not objected to. In those instances where no objection was made, the appellant Railroad Company waived its right to complain of the argument on appeal unless the argument is so prejudicial that an instruction by the trial court to the jury to disregard it would not have removed from the minds of the jury the prejudice produced. Southern Pacific Co. v. Hubbard, 156 Tex. 525, 297 S.W.2d 120; Ramirez v. Acker, 134 Tex. 647, 138 S.W.2d 1054. However, in view of objection being made to a part of it and admonition given by the court, the entire argument will be considered to determine whether the cumulative effect of all of the statements is so prejudicial and inflammatory as to deny the appellant a fair trial. Texas & N. O. R. Co. v. Wilkerson, Tex.Civ.App., 260 S.W.2d 912; Panhandle & Santa Fe Ry. Co. v. Ray, Tex.Civ.App., 221 S.W.2d 936, wr. ref., n. r. e.; Southwestern Greyhound Lines v. Dickson, 149 Tex. 599, 236 S.W.2d 115; Texas Employers Ins. Ass'n v. Haywood, 153 Tex. 242, 266 S.W.2d 856. The argument complained of does not fall within the rule of International & G. N. R. Co. v. Lane, Tex.Civ. App., 127 S.W. 1066; Fort Worth & D. C. R. Co. v. Anderson, Tex.Civ.App., 194 S. W. 847; Galveston, H. & S. A. R. Co. v. Cooper, 70 Tex. 67, 8 S.W. 68; Texas Cent. R. Co. v. Parker, 33 Tex.Civ.App. 514, 77 S.W. 42, no writ; Chicago, R. I. & G. Ry. Co. v. Swann, 60 Tex.Civ.App. 427, 127 S. W. 1164; Texas Cent. R. Co. v. Pledger, 36 Tex.Civ.App. 248, 81 S.W. 755; where vicious attack is made upon a railroad de-

fendant simply because it is a railroad; nor was the argument so improper as to amount to an unjust criticism and abuse of the appellant in the character and presentation of its defense, its witnesses or its counsel as condemned in Coleman v. Miller, Tex.Civ. App., 19 S.W.2d 829, affirmed Tex.Com. App., 29 S.W.2d 991; Airline Motor Coaches v. Campbell, Tex.Civ.App., 184 S. W.2d 532, wr. ref.; Panhandle & Santa Fe Ry. Co. v. Ray, Tex.Civ.App., 221 S.W.2d 936.

■ The use of a mathematical formula for illustrative purposes has had the sanction of the Texas courts in J. D. Wright & Son Truck Line v. Chandler, Tex.Civ.App., 231 S.W.2d 786, and in other jurisdictions see Boutang v. Twin City Motor Bus Co., 248 Minn. 240, 80 N.W.2d 30; Flaherty v. Minneapolis & St. L. Ry. Co., 251 Minn. 345, 87 N.W.2d 633; 60 A.L.R.2d 1351; Imperial Oil, Ltd. v. Drlik, 6 Cir., 234 F.2d 4.

■ The reference to the jury's being called upon to do the dirty work and appellee reduced to the necessity of taking a stick and picking up paper on the school yard, etc., apparently was in reply to appellant's argument that a suit for this sum against a local farmer would be laughed out of court and the argument that the jury's action should be the same as against the hypothetical farmer; that is, laugh appellee out of court. It has been held traditionally that counsel may properly argue all phases of the evidence, draw reasonable deductions therefrom, reply to opposing argument, draw upon common knowledge, and suggest the extent of damage it is thought the evidence reflects. See Trial Civil Cases, 41–B Tex.Jur., Secs. 222, 235, 239. The argument in this case more properly falls within the rule of King v. Federal Underwriters Exchange, 144 Tex. 531, 191 S.W.2d 855. Brinksmanship in this field has little to recommend it as juries are composed of sensible men and women and they usually fully discount the high-flown adjectives, purple prose, sophistry and hyperbole of counsel in his ardor.

A number of other serious questions have been presented and they have had serious attention and consideration, none, however, presents reversible error and they are respectfully overruled. A discussion of the question of excessiveness of the judgment is warranted, however.

The evidence adduced in the trial is contained in a 653-page statement of facts. Ten doctors testified, so even mention of all pertinent facts cannot be made within the permissible limits of an opinion. The appellant's commendable effort to present the appellee's testimony fairly in his brief is adopted with slight editorial deletion to remove an occasional conclusion of the author and reference to the record:

"Plaintiff, after first testifying with respect to his age, his education, which was partly in the 9th grade, and his early jobs, which consisted mostly of hard, manual labor, stated that he hired out as a fireman for the defendant in 1944; that he worked on an extra train; that he had kept a regular run until the war was over and after that he was placed on the extra board; that in 1951 until the date of the accident, October 12, 1955, he had a regular job either as a fireman or an engineer; that he was promoted to locomotive engineer in 1952; that his seniority on the fireman's roster was No. 20; that for the draft during World War II he was classified as 4-F because of a sunken chest; that he had suffered from sinus headaches prior to the accident in 1952 or 1953; that he could get no relief after two or three days in the hospital at Shreveport and was sent home; that his earnings for 1952 were $6,506.45; for 1953, $5,371.88; for 1954, $6,064.15; for 1955 until October 12, 1955, $5,429.54; that on the night of the collision the train was moving on the main line; that the only thing he remembered was that they came around a curve and hit him in the face; that the accident happened on October 12, 1955, and the next thing that he remembers was waking up in the hospital in Shreveport in December of that same year; that there wasn't much pain, but he couldn't handle his left arm or left leg; that all he could do was 'barely wiggle them a little bit,' meaning his fingers; the catheter was removed from his bladder two days after he regained consciousness; that his jaw was broken and flopped around to one side; that he was breathing normally through his nose at that time, but a week later a plate was placed in his jaw, four screws being placed in the left side, one screw in the right side; that an incision was made in his throat to stick a pipe through the windpipe to permit breathing; that after the operation he had no pain in his jaws or any pain before the operation; that the pipe which was placed in his windpipe was removed after about three days and at this particular time he suffered in his shoulders some; that he had pain in his shoulders and neck for about four or five months; that he left the hospital on the 22nd day of December; that the pain in his shoulder lasted for four or five months; that by means of a rubber ball, which he, plaintiff, had requested, he got to the point where he could work his hand 'pretty good'; that after his release from the hospital on the 22nd he took a five-hour car trip to his home in Greenville, riding in the front seat beside his wife, with his head in her lap, or whatever position he could be in to get comfortable; that such ride didn't *effect* him; that he had no sensation of pain aside from his neck and shoulders; that after about a year following the instructions of Dr. Bullock, he could raise his left arm; that he experienced considerable discomfort from the temporary plate which was placed in his jaw and he imagines he went to see Dr. Pool in Greenville fifty or seventy-five times; that he had never gotten to where he could handle

his jaws as he did before the accident and had no sensation or feeling in both of his jaws; that he had a sensation of lack of taste of any kind, but he further states 'I can eat them now pretty good'; that his tongue is partially paralyzed, according to Dr. Boykin; that he had headaches, which he describes as rather severe; that his left leg just wobbles; that he has fallen one hundred times; that he has a dead, numb feeling in his arm when he goes to sleep at night on his left shoulder; that his right shoulder has a spot in it which runs down and takes in two fingers when he sleeps on his right shoulder; that he doesn't know when his left leg is going to give way on him; that he has no lifting power in his left arm; that his eyes are weakening all the time; that on two occasions when he attempted to sleep with his right arm back under his head, he has awakened twice with his arm 'paralyzed up there' * * *; that he doesn't have too much balance and can be walking along and stumble and stagger; that he has difficulty in sleeping more than three or four hours at a time and wakes up so uncomfortable he can't go back to sleep; that his left leg jumps anywhere from fifteen minutes to four hours every night; that he cannot remember dates since the accident; that he is unable to perform the duties of a railroad engineer or fireman and he is likewise unable to perform manual labor. * * * he did not make up his mind that he wouldn't go back to work as an engineer or fireman until the last few months.

"On cross-examination, plaintiff testified that he was 39 years of age on October 12, 1955; that he doesn't know who he was under the care of for the four weeks in Sulphur Springs; that he left the North Louisiana hospital toward the last of January, 1956, and was asked to report back for further examination in thirty days; that Dr. Oxford and Dr. Boykin re-examined him; that plaintiff did not remember whether he made three or four trips down there; that he was last there the latter part of July, 1957; that plaintiff had mowed the lawn last summer, which was 1957; that he would make a round and then sit down a while, then make another round; that he had been mowing it ever since; that he trimmed whatever was in the yard; that he began driving an automobile in the spring of 1956; that he drives it around in Greenville; that he hadn't hit anybody yet; that there are complaints about getting so close, * * * none of the neurologists have advised the plaintiff that he is a menace to public safety when he drives an automobile with a brain injury; that he had gained in weight at least thirty pounds since he left the hospital."

No effort to summarize the medical testimony will be made except to note that the most optimistic medical view expressed was that appellee would be able to work as a "clerk, run a news stand, be a night watchman, or do any form of work which did not require him to lift heavy objects or stoop and bend or walk too much." Other doctors expressed the opinion that he was totally and permanently incapacitated from performing the duties of a railroad fireman or engineer and from doing manual work. The lay witnesses tended to corroborate the testimony of the appellee and indicate that his injuries were accompanied by great pain and suffering.

■ Appellee has cited Texas Pacific-Missouri Pacific Terminal R. of New Orleans v. Welsh, 5 Cir., 179 F.2d 880, and Dice v. Akron, C. & Y. R. Co., 342 U.S. 359, 72 S.Ct. 312, 96 L.Ed. 398, in support of a view that excessiveness of verdicts in FELA cases are not subject to appellate review. At the time of writing this opinion, the final disposition of Gulf, C. & S. F. Ry. Co. v. Deen, Tex.Civ.App., 275 S.W.

2d 529, has not been made by the Supreme Court of the United States. This becomes unimportant, however, since this Court has reviewed the question in accordance with what is thought to be the State rule, that is, that this court may reduce or set aside this judgment if after consideration of the amount of the verdict and the evidence bearing upon the amount it finds the verdict excessive, Dallas Ry. & Terminal Co. v. Farnsworth, 148 Tex. 584, 227 S.W.2d 1017; Wilson v. Freeman, 108 Tex. 121, 185 S.W. 993; Rule 440, V.A.T.R., and has concluded that the judgment is not excessive.

The elements of damage in this case and the evidence pertaining thereto must be considered to determine whether the award as a whole appears to be reasonable compensation for the injuries sustained. Recovery for wages lost from the time of the collision to the time of the trial has overwhelming support in the evidence. The appellee endured enormous mental and physical pain and suffering prior to trial and the evidence is abundant that he will probably continue to suffer in this respect for the remainder of his life. Reasonably a substantial damage award could be made upon these elements of past and future mental and physical pain and suffering. Appellee's injuries have substantially reduced and may entirely prevent any future earnings. Consideration of the appellee's employment and earning history together with his life expectancy and other relevant facts leads to a reasonable conclusion that the element of damage occasioned by the loss of future earnings is a very large sum. Considering all the evidence and the elements of damage involved, it cannot reasonably be said that appellee's damage is less than that awarded by the trial court, and therefore the award is not excessive.

The total amount of the award may cause the mind to boggle on first view, but on review the evidence is not such as to convince the court that upon the record the award is excessive. The court is not authorized to reduce an award because it is large or because it would work a hardship on the payer.

Examination of the facts and the authorities upon the question presented in the appeal leads to the conclusion that reversible error is not shown and each of appellant's points of error is respectfully overruled.

Appellant's motion for rehearing is respectfully overruled, and the judgment of the trial court is affirmed.