GULF, COLORADO & SANTA FE RAIL-
WAY COMPANY, Appellant,

v.

Glen C. HAMPTON, Appellee.

No. 3697.

Court of Civil Appeals of Texas.
Eastland.

June 8, 1962.

Rehearing Denied June 29, 1962.

Hudson, Keltner, Jordan, Smith & Cunningham, Ft. Worth, R. R. Holloway, Brownwood, for appellant.

Helm, Jones, Pletcher & Winkelman, Houston, Griffin & Griffin, Brownwood, for appellee.

COLLINGS, Justice.

Glen C. Hampton brought suit against Gulf, Colorado & Santa Fe Railway Company for damages under the Federal Employees' Liability Act. The basis of the suit was an injury alleged to have been sustained by plaintiff on April 20, 1960, while performing switching operations in the course of his employment with the defendant railway company. The case was tried before a jury and based upon the verdict, judgment was rendered for Hampton for $100,000.00. Gulf, Colorado & Santa Fe Railway Company has appealed.

■ In connection with his attempt to establish the monetary loss suffered as a result of his injuries, appellee Hampton introduced over objection the testimony of Mr. Brayton Smith concerning the cost of annuities necessary to assure various and certain amounts of income for the remainder of his life expectancy. Mr. Smith testified that according to the standard insurance manual it would take a payment of $3,130.00 to produce a monthly income of $10.00. He then multiplied that 50 times to get the figure for a single premium annuity, with no refund, for $500.00 a month. Appellant objected to the testimony on the ground that it was not a proper measure of damages and was irrelevant and immaterial. Appellant's first point complains of the action of the court in admitting this testimony. The point is overruled. The weight of authority supports the proposition that such

evidence is admissible. See Texas & New Orleans Railroad Company v. Jacks, Tex. Civ.App., 306 S.W.2d 790, (Ref. N.R.E.); Louisiana & Arkansas Railway Company v. Mullins, Tex.Civ.App., 326 S.W.2d 263, (Ref. N.R.E.); Vicksburg & Meridian Railroad Company v. Putnam, 118 U.S. 545, 7 Sup.Ct. 1, 30 L.Ed. 257. In the case of Houston and Texas Central Railway Company v. Willie, 53 Texas 318, it was stated by the Supreme Court of Texas that:

"If compensation for lessened ability to labor be assumed as the true measure of actual damages, then it would seem that it should not be such sum as would bring an annual interest corresponding to the annual value of this lessened ability, leaving the principal sum still belonging to the estate of plaintiff after his death, although he had then become wholly incapacitated for labor; but would be an amount which would purchase an annuity equal to this interest, during the probable life of the plaintiff, calculated upon a reliable basis of the average duration of human life."

■ Appellant complains in numerous points of the action of the court in overruling its motion for a mistrial because of jury argument by attorneys for appellee. The court sustained appellant's objection to most of the argument at the time and instructed the jury not to consider the same. Even if it should be held that some of these arguments were improper, they were not of such a prejudicial nature that they were beyond correction by the instructions given by the court. Younger Bros. Inc., v. Myers, 159 Tex. 585, 324 S.W.2d 546; Household Furniture Co. v. Storrie, Tex.Civ.App., 292 S.W. 612. For instance, appellant complains of the reference of appellee's attorney Helm to the fact that another of appellee's attorneys seated at the counsel table was "an expert—on handling himself", when it was obvious and was well known in the community that the attorney referred to was handicapped in a manner similar in some respects to the injury complained of by

appellee. Appellant also complains of another statement made by appellee's counsel to the jury to the effect that "I would not change places with this man for anything on earth." We hold that the harmful effects of these arguments were cured by the action of the trial court in sustaining appellant's objections thereto and instructing the jury that such arguments should not be considered. Texas Employers' Insurance Association v. Kennedy, Tex.Civ.App., 303 S.W.2d page 440.

■ Contrary to appellant's contention in its 2nd point, counsel for appellee had the right to request the jurors to answer special issues in a certain way and to state his opinion that justice would "completely flop in this case" if the issues were not so answered. The effect of such an argument was not to call upon the jury to answer in such a way that appellee might prevail. Texas & New Orleans Railway Company v. McGinnis, 130 Tex. 338, 109 S.W.2d 160.

■ Appellant's 6th point complains of the reference of appellee's counsel in jury argument to the failure of appellant to call one of two doctors who were in the court room. The record discloses that both doctors were present at the request of appellant and that the doctor who was not called as a witness was an assistant of the doctor who testified for appellant. Appellant's attorney had stated in open court that he would refrain from using the other doctor as a witness but tendered him to appellee. Under these circumstances appellee's counsel had the right to comment upon the failure of appellant to call the doctor as a witness. St. Louis, S. F. & T. Ry. Co. v. Green, Com.App., 37 S.W.2d 123. It also appears that the court sustained appellant's objection to the argument. The court properly refused a new trial on the basis of this complaint.

■ Appellant's 3rd point complains of argument by appellee's counsel ridiculing appellant's pleadings. Appellee's counsel was reading portions of appellant's pleadings to the jury which urged alternative contentions and in which appellant referred to "this unfortunate accident." At this stage in the reading of the pleadings, appellee's counsel commented to the jury, "they are grieving themselves to death." Objection was made to this argument and was overruled by the court. This argument was not of such a prejudicial nature that the action of the court in overruling appellant's objection thereto constituted reversible error. The point is overruled.

We also overrule appellant's contention that the cumulative effect of all the argument complained of deprived appellant of a fair trial before the jury and required a reversal of the judgment. No flagrant abuse of the limits of proper argument is shown.

■ During the cross examination of a doctor called as a witness by appellant, counsel for appellee began to question the doctor as follows: "All right, sir. We have been reading recently just how turning a spade of dirt can cause a man—." At this point appellant objected on the ground that the question was irrelevant and prejudicial; that the question constituted a reference to the back of the President of the United States. Appellant urges that it is general knowledge that the President had a fusion operation and recently reinjured his back by turning a spade of dirt. The trial judge sustained the objection and instructed the jury to disregard the question. It is appellant's contention that the prejudicial effect of the question was such that it could not be cured by an instruction to the jury. We cannot agree with this contention. The prejudicial effect of the question, in our opinion, was not of such a nature that it could not be cured by the instruction.

■ The jury found, in effect, that the damages sustained by appellee as a result of his said injuries amounted to $100,000.00. In appellant's 9th point it is contended that the verdict is grossly excessive and that the court erred in failing to so hold and erred in refusing to require a remittitur of at least

$50,000.00. The evidence shows that on April 20th, 1960, at the time he was injured, appellee was 33 years of age. It was stipulated that the life expectancy of a man 33 years of age was 33.44 years according to the Standard Ordinary Tables of Mortality. Appellee Hampton had a tenth grade education, was hired in 1955, after full and complete physical examination by railroad doctors. The year preceding his injury appellee earned $6,439.78, and there was testimony to the effect that $6,400.00 a year would be a fair estimate of what he had made during the years he worked for appellant. The evidence further indicated that a man had to be in good physical condition to do the work required of appellee and that he was in good condition when he started on the trip on April 20, 1960; that the collision which caused his injury was accompanied with great force; that the tank car on which he was riding was damaged; that the stock car was turned over on its side and a brick car was knocked off the rails. Appellee testified that he received a back injury in the accident and that the injury was in the lower part of his back. The evidence indicated that on May 9, 1960, appellee was operated on at the Santa Fe Hospital at Temple where a bone fusion was done on his back; that he was in a paralyzed condition before the operation; that his right side from the waist down was paralyzed; that, after the operation, he was in a wheelchair and in bed for about three months, until about August, 1960, when he began to take some exercises, but very little because it was painful; that he wore a brace continuously until February, 1961, except when he was lying down; that at the time of the trial he still wore the brace on occasions; that he is unable to get around as freely as before the accident; that he has pain constantly, has no use of his right foot and has pain through his lower back; that he sleeps with a board under his mattress and sometimes has to sleep on the floor; that he is unable to return to work as a brakeman and cannot do work which requires physical exertion. He stated that he had sold some of his cattle because he could not tend to them and needed money. The evidence indicates that prior to his injury appellee was a good workman and was physically capable of doing a good job; that he was strong and could do any kind of work and was a hard worker; that he was not in good shape at the time of the trial; that he helped around the house but most of the time stayed in bed; that he walks with a limp and with a cane; that before he was injured he did some riding in connection with work with his livestock; that his condition since the injury has remained about the same for the last several months; that he suffers so much pain that he takes novocain shots at least every two weeks. Appellee's doctor in Brownwood testified that when he first saw appellee in the hospital after the accident in the spring of 1960, appellee complained of pain in his back, numbness in his right leg, inability to lift the toes of his right foot and inability to pull the right foot up toward his face. The doctor testified that the symptoms indicated a diagnosis of a ruptured disc. He further testified that he had been giving Hampton novocain injections in the tender areas of his back with some cortisone; that these shots apparently gave appellee temporary relief; that appellee wears a brace; that foot drop has persisted and may be permanent; that there has been no appreciable recovery of the foot drop condition; that appellee wears a brace down his leg attached to his shoe; that without this brace appellee's foot would drag and cause him to stumble. The doctor testified that in his opinion the foot drop and the fusion at the location of the ruptured disc were conditions which were permanent; that if the vertebrae involved were fused and were solid and unbending that was the best appellant could hope for. The doctor stated his opinion to be that the pain should gradually improve over a period of time but he seriously doubted that Hampton would ever be able to resume work as a brakeman or do any other kind of work which required him to lift weights of any appreciable size or to do repeated bending over during a days work; that he expected some im-

provement in appellee's condition but not in the foot drop. The evidence indicated that at the operation it was noted that appellee Hampton had some type of congenital defect in his lower back. The doctor who performed the surgery had examined Hampton in December, 1960, and in February and April, 1961; he testified that there was no atrophy of the leg in December, which was considered a good sign; that there was atrophy in February, 1961, and that this could go along with a nerve injury. It was also noted at that time that appellee walked with a shuffle type of gait; that he could walk some without his cane but that he walked better with it; that the motion of his back was restricted and limited; that the foot was not functioning normally. This doctor did not agree that the fusion was solid and felt that there was some motion in the fusion.

In passing upon the question of whether a verdict is grossly excessive the evidence should be considered in the light most favorable to the award. When so considered, the evidence supports the verdict. It shows that appellee has endured considerable pain and suffering which will continue for an indefinite time; that he was unable to follow gainful employment at the time of the trial and that his prospects for future employment were such that the jury could properly conclude that his injury is permanent; that his incapacity to labor will be permanent and substantial and that he can never again do hard manual labor.

The evidence of appellee's pain and suffering and his past, present and future disability, considered in connection with his life expectancy of 33.44 years and an estimated prior annual income of $6,400.00, tend to support the verdict. In such cases the amount of damages to be awarded is primarily a question for jury determination. 17 Tex.Jur.2d pages 408, 409. The amount of the verdict does not indicate a disregard of the evidence, or that the award was the result of passion, prejudice, partiality or corruption. There is no showing that such

improper considerations contributed, in any way, to the amount of the verdict. In this condition of the record the verdict of the jury is conclusive and should not be set aside.

The judgment of the trial court is affirmed.