**Lula HELMS et al., Plaintiff,**

**v.**

**UNITED STATES of America, Defendant.**

**Civ. A. No. 5–63–16.**

United States District Court
N. D. Texas,
Lubbock Division.

July 29, 1964.

Warlick Carr, Key, Carr & Clark, Lubbock, Tex., for plaintiff.

Barefoot Sanders, U. S. Atty., Melvin M. Diggs, Asst. U. S. Atty., Fort Worth, Tex., for defendant.

Jack D. Maroney, Brown, Sparks & Erwin, Austin, Tex., for intervenor.

FISHER, District Judge.

This action is one for personal injury resulting to W. O. Helms, and for property damage to Plaintiff's automobile. The accident in question occurred May 16, 1962, at approximately 12:30 P.M. Suit is brought by the wife of W. O. Helms, pursuant to the act of Congress of June 25, 1948, known as the Federal Tort Claims Act.[1]  United States of

---

1. 28 U.S.C.A. § 1346(b) * * * "the districts courts * * * shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."

America is Defendant herein because of the alleged negligence of J. C. Ebersole, employee and driver of the Government's vehicle. At the time and on the occasion in question, J. C. Ebersole was within the course and scope of his employment with the Soil Conservation Service, an agency of the United States Department of Agriculture.

There were no traffic controls at the intersection where this collision occurred, and it was stipulated by the parties that W. O. Helms was driving a Buick automobile in a northerly direction on South Seventh Street in the City of Brownfield, Terry County, Texas, just prior to the collision. The driver of the Government vehicle, J. C. Ebersole, was driving west on Buckley Street in that city, just prior to the collision. The parties, W. O. Helms and J. C. Ebersole, collided in the intersection of South Seventh and Buckley Streets. Right-of-way at the intersection was controlled by an ordinance of the City of Brownfield which provided as follows:

"Section 1(a). The driver of a vehicle approaching an intersection shall yield the right-of-way to the vehicle which has entered the intersection from a different street, roadway, or highway.

"Section 1(b). When two vehicles enter an intersection from different streets, roadways, or highways at the same time, the driver of the vehicle on the left shall yield the right-of-way to the other."

Where not otherwise marked, the Brownfield City Ordinance provided for a speed limit of thirty miles per hour.

Trinity Universal Insurance Company has intervened, praying to be subrogated to the rights of Plaintiff insofar as said company has paid Plaintiff compensation.

The Plaintiff contends that W. O. Helms entered the intersection of South Seventh and Buckley Streets before the vehicle driven by J. C. Ebersole had entered such intersection; that Ebersole was negligent in failing to yield the right-of-way to Helms; that Ebersole, just prior to the collision, was traveling at a dangerous and excessive rate of speed, and that he failed to reduce his speed as he approached the intersection. The Defendant, United States of America, contends that the driver of the Soil Conservation vehicle, J. C. Ebersole, entered the intersection prior to the time that W. O. Helms entered said intersection; that Helms was negligent in not yielding the right-of-way to him, therefore, and, in the alternative, that the accident was unavoidable.

Six witnesses testified to the relative speeds of the Buick automobile then being driven by W. O. Helms, and the pickup truck driven by J. C. Ebersole. Three of these witnesses, Mrs. Opal Emery, Mrs. Myrtle Adkins, and Mr. Oscar Green were eye-witnesses to the speed of the Government pickup almost immediately prior to, though not at the actual moment of, the collision between the two vehicles. Mr. Robert Mason, an expert witness testifying for the Plaintiff, and Sergeant Charlie Ray Montgomery, an employee of the City of Browfield Police Department, who investigated this accident, and who was called by the Defendant, testified as to the speed of the vehicles, basing their opinions on, insofar as Mr. Mason was concerned, certain detailed measurements and mathematical computations concerning momentum, velocity, friction, and impact, and, insofar as Sergeant Montgomery was concerned, the physical measurements taken at the scene of the accident and what he learned by talking with Mr. Ebersole.

While J. C. Ebersole was proceeding down Buckley Street from the intersection of Buckley and Fifth Streets, and on down the block west toward Seventh Street, he was, by his own testimony, intent on discovering if a friend's parked car was at a house one block south of Buckley Street and on the southeast corner of the block where the collision occurred. He has no recollection of decreasing his speed as he descended the rather steep slope existing in Buckley Street as it crosses Fifth Street and

finally levels off after crossing Sixth and Seventh Streets. Ebersole states that he maintained the same speed from Fifth to Seventh Street, but that this speed was not in excess of twenty-five or thirty miles per hour. However, three completely disinterested witnesses, Mrs. Opal Emery, Mrs. Myrtle Adkins, and Mr. Oscar Green, visibly traced the movement of his pickup as it descended the hill at Fifth and Buckley Streets to a point which was very near that of the collision on Seventh and Buckley Streets. All of these witnesses gave very credible testimony that Ebersole was traveling at a speed of between forty-five and fifty miles per hour, and the Defendant does not satisfactorily refute this evidence. Not only did two of the witnesses visibly follow the speed of the pickup, but they were first attracted to it by the unusual noise it generated as it descended the hill, and by the dust stirred up by it. The Government pickup was "flying off the hill" stated one witness to its speed, and the "racket and the dirt" attracted the attention of another. The detailed and scientific measurements and calculations of the Plaintiff's expert witness, Mr. Robert Mason, holder of a Master's degree in Mechanical Engineering, and a teacher and later professor of that subject for twenty-one years at Texas Technological College, and the inference derived therefrom, that is, that the Government employee was driving at a greater rate of speed than was W. O. Helms, and that it was the Government vehicle which first struck the Buick automobile, were not matched in logic or persuasiveness by the conclusions drawn by Sergeant Charlie Ray Montgomery. The Court is convinced that the logic as to this matter of the speed of the vehicles and their entrance into the intersection as presented by the Plaintiff must prevail, that when two vehicles come together at approximately a right angle to each other, the vehicle traveling at a comparatively greater rate of speed will divert the slower traveling vehicle from its otherwise projected direction to a greater degree. The Government pickup continued not only in a much straighter line than the Buick after the collision, but traveled across a sand bank which was from two and one-half to three feet in height and through a plowed field for a total distance of ninety-eight feet. Although the Buick was the heavier of the two vehicles, the difference in weight and the proposition that a lighter vehicle, being first struck, will travel a greater distance than one which is heavier, was not so conclusively presented as to overcome the more persuasive argument of the greater speed of the pickup causing it not only to travel further but to divert the Buick automobile from its former path to a much greater extent than it was itself diverted.

Therefore, the Court finds that Plaintiff, W. O. Helms, was in nowise negligent in his operation of the Buick automobile at the time and place in question, but that J. C. Ebersole was negligent in that he was traveling at an excessive rate of speed immediately prior to the collision; that he failed to reduce his speed as he approached the intersection of Seventh and Buckley Streets, though knowing it to be a dangerous intersection; that he failed to keep a proper lookout, and that these negligent acts and omissions were a proximate cause of the collision and damages suffered by Plaintiff, W. O. Helms, as a result thereof.

▮▮ We will now consider the issue of damages to be awarded the Plaintiff, and the Court notes that there is a paucity of cited cases upon which to base its judgment, there being only two cases cited in the trial briefs of either party.[2] Beyond question, W. O. Helms is totally and permanently disabled and is absolutely incapable of ever earning wages again. The testimony by physicians and nursing home managers

---

2. City of Abilene v. Jones, Tex.Civ.App., 355 S.W.2d 597 (1962), and Gulf, Colorado & Santa Fe Railway Co. v. Hampton, Tex.Civ.App., 358 S.W.2d 690 (1962).

indicates that one in the Guardian's position might expect to incur monthly expenses of about $275.00 for the nursing care of W. O. Helms. This does not include expenses for physicians, medicines, drugs or physical therapy. These latter expenses have been estimated at about $75.00 per month. Reasonably considered, however, these figures are above the maximum, for it stands to reason that if Mr. Helms should contract some disease, respiratory problem, or any physical breakdown which might cause his medical expenses to increase for a time, it will be but for a short time since he is obviously in no physical or mental condition to long withstand the ravages of a serious illness. His early demise cannot be considered an unlikely result of his serious condition.

The Court, therefore, finds that Plaintiff, Lula Helms, is entitled to her damages in the total amount of EIGHTY-FOUR THOUSAND THREE HUNDRED and no/100 ($84,300.00) DOLLARS, such amount being comprised of the following: $19,000.00, accrued medical expenses; $24,000.00, future medical expenses; $26,000.00, loss of earnings ($8,000.00 loss of earnings in the past, and $18,000.00, loss of future earnings); $5,000.00 to Mrs. Helms for loss of companionship and consortium; $300.00, damages to Plaintiff's automobile, and $10,000.00, pain and suffering. In regard to amount of damages awarded to Plaintiff for pain and suffering, it must be given consideration that though it is unquestionable that W. O. Helms undergoes terrific pain, the fact is that he is neither now, nor will he ever be, a rational, thinking individual. His lack of comprehension, though not total, does considerably diminish the mental suffering to which he is subjected. To suffer, and be truly and rationally cognizant of that suffering, is inestimably worse, and so the Court in its award of damages must take into account the true situation, and for that reason have awarded only $10,000.00 in damages.

Intervenor, Trinity Universal Insurance Company, is subrogated to the rights of Plaintiff against Defendant, United States of America, for the full amount of compensation benefits it has paid Plaintiff, and is allowed its reasonable expenses and attorneys' fees in the amount of Two Thousand and no/100 ($2,000.00) Dollars, all of which shall be deducted from Plaintiff's total recovery of $84,300.00.

The attorneys for Plaintiff, Lula Helms, are hereby awarded their attorneys' fee of twenty per cent (20%) of the amount remaining after deduction of the subrogation claim.