**Ray E. SEELEY et al., Appellants,**

v.

**Dr. Wentworth EATON et al., Appellees.**

**No. 911.**

Court of Civil Appeals of Texas,
Houston (14th Dist.).

Jan. 30, 1974.

Rehearing Denied March 20, 1974.

John H. Holloway, Houston, for appellants.

George H. Hagle, Frank B. Davis, O. C. Lilienstern, Andrews, Kurth, Campbell & Jones, Harold Lloyd, Houston, for appellees.

CURTISS BROWN, Justice.

This is a medical malpractice case.

Appellants, Ray E. Seeley, individually and as next friend for several minor children, the estate of Florene Seeley, and several adult children brought this suit against appellees Dr. Wentworth Eaton and Dr. J. F. Cox, Jr., for the wrongful death of Florene Seeley resulting from malpractice in connection with surgery and medical treatment. The estate of Florene Seeley brought suit on the survivor's action for pain and suffering, and the other plaintiffs sought recovery for the loss of a wife and mother. At the close of the plaintiffs' case, the trial court granted an instructed verdict for Dr. Cox. Trial was to a jury which found in response to special issues that Dr. Eaton was not guilty of any negligence. The jury answered "None" to all damage issues. Accordingly, judgment was entered that plaintiffs take nothing against defendants Eaton and Cox.

Dr. Cox was the Seeley's family doctor. Mrs. Florene Seeley consulted him about the complaints which gave rise to this surgery. Dr. Cox recommended that she go to Dr. Eaton, a specialist in obstetrics and gynecology. Dr. Eaton advised Mrs. Seeley that she needed a vaginal hysterectomy and some minor restructuring work in her abdominal cavity. This surgery was performed on September 4, 1968, by Dr. Eaton with Dr. Cox assisting. After surgery Mrs. Seeley developed complications evidenced by abdominal distention, fever, and an "ileus" (a cessation of muscular activity of the colon, resulting in an inability to pass fecal matter). The distention was relieved several times by the use of a nasal gastric tube and slush enemas, but by September 26, 1968, her condition was such that an internist, Dr. Donald, was called

in. He ordered x-rays and, after examining Mrs. Seeley, recommended that surgery be considered immediately. On that same day, a surgeon, Dr. Scheid, was also called in. Surgery was considered for September 27, 1968, but was postponed so that Mrs. Seeley's physical condition could be improved to better withstand it. Her condition continued to be poor, and on October 1, 1968, Dr. Sheid performed an exploratory laparotomy. When he opened Mrs. Seeley's abdomen he found an infection of the vaginal cuff, which is the place from which the uterus is severed in a vaginal hysterectomy. The colon was adhered to this infection and was infected itself. Dr. Sheid removed approximately two feet of the colon and attempted to clean out all the remaining infection. Despite his efforts, Mrs. Seeley died on October 4, 1968, apparently from a massive pelvic infection and congestive heart failure. Additional necessary facts will be developed in the discussion of appellants' points of error.

Appellants bring this appeal on forty-five points of error. In the interest of brevity we will group them for purposes of discussion. Point one complains of jury argument; points two through twelve concern refused special issues and instructions; points thirteen through thirty-two complain of the existence and sufficiency of evidence to support the jury's findings; points thirty-three and thirty-four concern the use of medical texts for impeachment; point thirty-five complains of Dr. Eaton's testimony concerning his qualifications; points thirty-six through forty-five complain of the instructed verdict for Dr. Cox.

 In an objection to a jury argument, counsel for Dr. Eaton referred to appellants' counsel as pursuing a "vendetta against the medical profession and the fact that he files hundreds of unfounded malpractice suits." Standing alone this remark would require us to evaluate seriously whether this clearly improper comment was calculated to cause and probably did

cause the rendition of an improper judgment in the case. Texas Rules of Civil Procedure, rule 434. However, this prejudicial comment was made in response to appellants' counsel's jury argument: "I have also heard him when he represented plaintiffs who have sued doctors, because he plays both sides of the fence." This argument is as reprehensible (or nearly so) as the statement complained of. Thus the appellants are in no position to assert reversible error in this regard, since the comment of appellee's counsel was invited. Texas Sand Company v. Shield, 381 S.W.2d 48, 58 (Tex.Sup.1964). We would not like to be understood as suggesting that a harsh and prejudicial response to some improper action or statement of the opposing side can be countenanced. The response must be reasonable considering the provocation. Southwestern Greyhound Lines v. Dickson, 149 Tex. 599, 236 S.W.2d 115 (1951). The punishment must fit the crime. In our view the reply did not constitute an unreasonable response to the original improper statement of counsel for appellants. Point one is overruled.

■ Appellants requested a number of issues and instructions which were refused. We are of the opinion that those refusals were proper. The requested issues inquiring as to whether the failure to perform vaginal examinations, the failure to cease use of the nasal gastric tube and slush enemas, the failure to obtain additional bacteria cultures after September 10, 1968, the failure to obtain consultation with an internist after September 26, 1968, the failure to use other drugs, and the failure to obtain more timely and adequate examinations were all without support in the evidence. There was absolutely no testimony that the doctor's actions in this regard failed to meet the standard of good medical practice. At the most there was testimony that other courses of action *could* have been taken, but not that they *should* have been. Since these issues were not raised by the evidence, they were properly refused. Tex.R.Civ.P. 279.

■ The requested issues as to Dr. Eaton's failure to obtain x-rays, the failure to perform exploratory surgery prior to October 1, 1968, and the failure to submit Mrs. Seeley to surgery "in view of Dr. Donald's recommendations" were properly refused because they were merely shades and phases of submitted issues. Tex.R.Civ.P. 279. Issue number four submitted the question whether the failure to submit Mrs. Seeley to surgery before October 1, 1968, was negligent. This adequately submitted the theory contained in the refused surgery issues. Issues numbers six and eight submitted the questions whether Dr. Eaton's failure to obtain x-rays both before September 26, 1968, and after September 28, 1968, was negligent. The refused x-ray issue was a shade and phase of this theory.

■ Appellants further complain of the refusal of two instructions. The first was that a physician has a duty to consult a specialist. Refusal of this instruction was proper because it could not have aided the jury in answering the issues. Tex.R. Civ.P. 277. There was no evidence that Dr. Eaton failed to obtain proper consultation. The second instruction was that the other physicians in the case were agents of Dr. Eaton and that he was responsible for their actions. Refusal of this instruction was proper because there was no evidence of any negligence by those physicians which could be charged to Dr. Eaton. The instruction therefore could not have aided the jury in answering the issues. Tex.R. Civ.P. 277.

■ Appellants next challenge the existence and sufficiency of the evidence to support the jury's answers to the special issues. We answer their points in order. The evidence does not compel a finding that Dr. Eaton placed a suture in Mrs. Seeley's bowel during the hysterectomy. In fact, the weight of the evidence indi-

cates that he did not. It was not shown as a matter of law that it was negligent to delay surgery until October 1, 1968. There was no expert testimony that the delay was based on anything but a prudent course of medical action. The evidence shows that x-rays are a diagnostic tool to be used in conjunction with other methods of diagnosis; it does not show that Dr. Eaton's failure to obtain x-rays before September 26, 1968, and after September 28, 1968, was negligent as a matter of law. It seems clear that the doctors knew what Mrs. Seeley's medical problem was; their difficulty was in treatment rather than diagnosis. Therefore, the failure to take x-rays was not shown to be a proximate cause of Mrs. Seeley's death. Finally, it was not established as a matter of law that it was negligent to fail to perform a rectal examination between September 15, 1968, and October 1, 1968. Dr. Eaton's testimony is clear that there were no indications that an additional examination was necessary. Appellants introduced no evidence to the contrary. We have also considered this evidence with regard to appellants' sufficiency points. After a review of the entire record, we hold that the jury's failure to find these acts or omissions negligent was not against the great weight and preponderance of the evidence.

■ Appellants next contend that the jury's refusal to find any damages was against the great weight and preponderance of the evidence and that some damages were established as a matter of law. Although the evidence does show some expenses incurred as a matter of law, the negative finding by the jury on the liability issues renders harmless any error in its answers to damages. Southern Pine Lumber Co. v. Andrade, 132 Tex. 372, 124 S.W.2d 334 (Tex.Comm'n App.1939, opinion adopted).

■ Appellants attack a long-standing rule set out by the Supreme Court in Bowles v. Bourdon, 148 Tex. 1, 219 S.W.2d 779, 783 (1949). That case held in part that standard medical texts cannot be introduced as direct evidence, but that when a doctor testifies as an expert with regard to disease or injuries, if he states that he recognizes a medical text as a standard authority, excerpts may be read from that text not as direct evidence but solely to discredit or test the weight of his testimony. In the present case, Dr. Eaton refused to recognize *any* texts as authorities, even though he admitted using some of them in obtaining his medical knowledge. We recognize that the rule of Bowles v. Bourdon, *supra,* is the law of this state, and we must therefore overrule appellants' points on this matter. A different question would have been presented had the trial court *admitted* this evidence upon the expert's admission that he had used the texts in his studies. The exercise of the court's discretion in favor of such admission might well meet the requirements of law. In this case, appellants were unable to adduce sufficient evidence of negligence to secure a favorable jury verdict; we can only speculate why other physicians were not brought into this trial to offer some evidence of negligence. It is hardly surprising, however, that Dr. Eaton would refuse to recognize as an authority a text that could be used to impeach his testimony. While we agree that texts should not be admissible as direct evidence because there is no opportunity for cross-examination of the author, nevertheless, for purposes of cross-examination, the exclusion of properly qualified medical texts solely upon the opinion of the testifying physician as to their lack of authoritative value seems to be somewhat harsh. The rule, however, is well established by the Supreme Court and is followed here.

■ The final contention of appellants with respect to the judgment as to Dr. Eaton is that the doctor should not have been allowed to testify, over objec-

tion, as to his professional qualifications and affiliations. It is fundamental that an expert must prove his qualifications in order to express his expert opinion. The question whether a witness in fact qualifies as an expert is for the determination of the trial court in the exercise of judicial discretion and is reviewable only for an abuse of discretion. Standard Motor Company v. Blood, 380 S.W.2d 651, 653 (Tex. Civ.App.—Houston [1st Dist.] 1964, no writ). It therefore follows that the trial court has the discretion to admit the testimony he deems necessary to make a decision on qualification. No abuse of this discretion has been alleged or shown in this case.

■■■ Appellants' remaining points of error allege that fact issues were raised under several theories which precluded the granting of an instructed verdict for Dr. Cox. One theory is that Dr. Cox failed to obtain the patient's informed consent. There is absolutely no evidence to support this proposition. The nine remaining theories are the same as those on which the refused issues as to Dr. Eaton were based. The evidence is clear that Dr. Eaton was, at all times after the hysterectomy, the primary physician. Dr. Cox merely assisted when and how he could. As the primary physician, Dr. Eaton had the ultimate liability and responsibility for determining the proper course of diagnosis and treatment. Under the holding of Bowles v. Bourdon, *supra,* a plaintiff must prove *both* negligence in treatment or diagnosis *and* that such negligence was a proximate cause of his injuries. Because of the relationship between Dr. Cox and Dr. Eaton, it is clear that even if Dr. Cox were guilty of some negligence, it was not a proximate cause of Mrs. Seeley's death. The instructed verdict was proper.

Affirmed.