Jose SENDEJAR, Sr., et al., Appellants,

v.

ALICE PHYSICIANS AND SURGEONS
HOSPITAL, INC., et al., Appellees.

No. 1009.

Court of Civil Appeals of Texas,
Tyler.

June 30, 1977.

Rehearing Denied Aug. 11, 1977.

Francis I. Gandy, Jr., Corpus Christi, Sam M. Yates, Jr., Houston, Robert R. Mullen, Jr., Alice, for appellants.

Cecil D. Redford, Dyer, Redford, Burnette, Wray & Woolsey, Ben A. Donnell, Meredith & Donnell, Corpus Christi, for appellees.

MOORE, Justice.

This is a medical malpractice case. Appellant, Jose Sendejar, Sr., individually and as next friend of his son, Jose Sendejar, Jr., (appellant), instituted suit against appellees, Alice Physicians and Surgeons Hospital, Inc., and Dr. D. R. Halverson, alleging that as a result of the negligent acts and omissions on the part of the hospital and the doctor occurring after Jose Sendejar, Jr., was admitted to the hospital, his son suffered permanent injuries to his spinal cord resulting in complete and total paralysis from his chest down to his lower extremities. Appellees denied generally the allegations of the petition and affirmatively alleged that the paralysis suffered by Jose Sendejar, Jr., was proximately caused by his own contributory negligence in overturning and wrecking his automobile shortly before he was hospitalized and treated by Dr. Halverson. Trial was before a jury. The jury found in response to the special issues that (1) the hospital was negligent in failing to exercise the proper standard of care in rendering hospital services to Jose Sendejar, Jr.; (2) such failure was not a proximate cause of the patient's paraplegia; (3) Dr. D. R. Halverson did not fail to exercise the proper standard of care in the treatment of Jose Sendejar, Jr.; (4) Jose Sendejar, Jr., failed to exercise ordinary care in the operation of his automobile shortly prior to the time of his hospitalization; (5) such failure was a proximate cause of his paraplegia; (6) his paraplegia was caused solely by the injuries received by him at the time of the automobile accident; and (7) neither the treatment rendered by Dr. Halverson nor the hospital aggravated his pre-existing condition or caused him to incur any past, present or future medical expenses or any compensatory damages. Pursuant to the jury's verdict, the trial court entered a take-nothing judgment against appellant. After his motion for new trial was overruled, appellant perfected this appeal.

We affirm.

Under the eleventh point, appellant contends that the "negative" finding of the jury in response to Special Issue No. 2 wherein the jury refused to find that the hospital's negligence was a proximate cause of the paraplegia suffered by appellant's son[1] is against the overwhelming weight and preponderance of the evidence. Under the twelfth point appellant likewise contends that the jury's "negative" finding to Special Issue No. 3 wherein the jury refused to find that Dr. D. R. Halverson was negligent in treating Jose Sendejar, Jr.,[2] is

1. "ISSUE NO. 1:

Do you find from a preponderance of the evidence that Alice P&S Hospital, acting by and through its nursing or administrative employees, in rendering care to Jose Sendejar, Jr., during his hospitalization from 11:30 PM May 15, 1971, to 9:00 AM, May 17, 1971, failed to exercise that standard of care which would have been exercised by a hospital of the same or similar size located in the same or similar community and under the same or similar circumstances?
ANSWER: It did fail."

2. "ISSUE NO. 3:
Do you find from a preponderance of the evidence that in his care of Jose Sendejar, Jr., Dr. Darrell Halverson failed to exercise that

"ISSUE NO. 2:

Do you find from a preponderance of the evidence that such failure of Alice P&S Hospital was a proximate cause of the paraplegia of Jose Sendejar, Jr., and the injuries and damages resulting therefrom?
ANSWER: It was not."

against the overwhelming weight and preponderance of the evidence. Appellant does not attack the judgment on the ground that there is "no evidence" to support the jury's findings.

■ In determining the question of factual insufficiency of evidence points, we are required to consider all the evidence in the entire record, both that in favor of, as well as that against the judgment. *Garza v. Alviar,* 395 S.W.2d 821 (1965).

The record reveals that Jose Sendejar, Jr., age 20, was involved in a one automobile accident near Benavides, Texas, on May 21, 1971, at approximately 8:00 p. m. At the time of the accident he was driving approximately 70 m.p.h. when his automobile left the road and overturned twice. He was thrown from the automobile and found about eight paces away. The evidence shows that Sendejar had been drinking at the time of the accident. The ambulance driver who picked him up observed no movement of any part of his body except that he was able to move his head. He was taken to the hospital where he was admitted to the emergency room at approximately 10:10 p. m.

The doctor on duty in the emergency room at the time Sendejar arrived at the hospital was Dr. D. R. Halverson. At the time he was admitted to the hospital Sendejar was in a semi-stuporous, combative and non-cooperative condition which was enhanced possibly because he had been drinking. Dr. Halverson testified that such condition rendered his examination very difficult because there was no specific complaint of pain. He testified that he made a complete physical examination, including the taking of x-rays, and was unable to find anything wrong except that the patient had some abrasions and was suffering from a concussion. He testified upon examination that all neurological reflexes in the lower extremities appeared to be normal but that he did not observe the patient moving his legs while he was in the emergency room. He testified that after examining the x-rays he saw nothing abnormal in the spine or spinal cord and there was no sign of paraplegia. After the emergency room examination Sendejar was admitted by Dr. Halverson to the hospital "to the service of" Dr. J. C. Gonzales, his family physician, at approximately 11:30 p. m. Dr. Halverson gave instructions that his bed be elevated thirty degrees, that he be aroused every two to three hours, and that he have bathroom privileges the following morning.

The expert medical testimony shows that once an emergency room doctor admits a patient to the hospital, he has no further responsibility toward the patient whatsoever. While it is without dispute that Dr. Halverson did not notify the patient's family physician, the undisputed evidence shows that the emergency room doctor is not required to notify the admitting physician at the time the patient leaves the emergency room and is admitted into the hospital.

It is undisputed that neither Dr. J. C. Gonzales, the family doctor, nor any other physician saw Sendejar from the time he left the emergency room on Saturday evening, May 15, 1971, until Monday morning, May 17, 1971. During that time he was attended regularly by hospital nurses approximately every two hours. Being unable to contact Dr. J. C. Gonzales, the nurses called Dr. Halverson who was still on duty in the emergency room and advised him that Sendejar was complaining of back pains and that he had not seen a physician since the time he had been admitted and that they felt he really needed to see a physician. Dr. Halverson prescribed a sedative but did not go to the patient's room. One of the nurses on duty testified that on Sunday afternoon she noticed that the patient's lower extremities did not respond to verbal command. According to the hospital records, however, the first time the nurses discovered that Sendejar was suffering from paralysis was at 8:00 p. m. Sunday evening when it was noted that the patient did not appear to be able to move his lower extremities.

standard of care which would have been exercised by a reasonably prudent physician in Alice, Texas, or in a community of the same or similar size, under the same or similar circumstances?

ANSWER: He did not fail."

According to the rules promulgated by the hospital staff, if a patient was in need of a doctor, it was the duty of the floor nurse to call the admitting physician. If the admitting physician could not be located it was the nurse's duty to call the physician covering for him, and if he could not be found, it was the nurse's duty to call the staff physician who was on call for that week. There is no evidence that the floor nurse attempted to contact any of these physicians except Dr. J. C. Gonzales. When Dr. J. C. Gonzales was finally contacted on Monday morning, May 17th, he advised that he could not see the patient but that he would send Dr. Dostal. After Dr. Dostal arrived and upon examination found Sendejar to be suffering from flaccid paralysis from the waist down due to a spinal cord injury, Dr. Dostal then directed that the patient be transferred to Memorial Hospital in Corpus Christi, Texas, where he would be treated by Dr. Rufino Gonzales.

Emma Cavazos, Sendejar's aunt, testified that she visited him from Sunday, May 16th, until Monday morning when he was transferred to Corpus Christi. She testified that on several occasions she requested the nurses to get a doctor and was told that Dr. J. C. Gonzales was not available. She testified that in spite of her many requests for the nurses to get another doctor, no doctor came until Dr. Dostal arrived at approximately 8:00 o'clock Monday morning. She also testified that on Sunday she observed Sendejar to move his legs and kick the sheet from his legs when he complained of being too warm. Other friends who visited him on Sunday afternoon also testified that they also saw him move his legs and observed him to kick off the covers.

Dr. A. E. Minyard, an orthopedic surgeon called by appellant, testified in response to a hypothetical question that Sendejar suffered a fracture of the fourth dorsal vertebra as a result of the automobile accident and that in his opinion Sendejar was not paralyzed when he was admitted to the hospital but was paralyzed when he was transferred from the hospital on the following Monday. He testified that in his opinion the paralysis commenced on Sunday and was caused by injuries to the soft tissues and the swelling and bleeding in the spinal cord. He testified that the paralysis came on gradually and that the function of the spinal cord was lost in increments. He further testified that the fact that Sendejar had some movement in his legs when he was admitted to the emergency room was an indication that the spinal cord had not been completely severed. He testified that with proper medical attention, total paraplegia could have been prevented or at least could have been partially prevented and that the failure to receive proper medical care was, in his opinion, the producing cause of the paraplegia. He admitted that the injury was difficult to detect on the x-ray picture taken by Dr. Halverson and that neither he nor Dr. Halverson would have detected the injury in the absence of a complaint of back pain by the patient.

Dr. Craig Norstrom and Dr. Joseph G. Klotz, both neurosurgeons, testified that they saw Sendejar after he arrived at Memorial Hospital in Corpus Christi. They testified that as a result of x-ray studies, they were of the opinion that Sendejar's spinal cord was severely crushed and severed at the time of the automobile accident and that such injuries caused immediate paralysis at that time. They testified that in their opinion he was paralyzed at the time he reached the emergency room at the hospital and that the type of medical treatment he received thereafter would not have made any difference whatsoever because he would have still been paralyzed. Thus, according to their testimony Sendejar's paraplegia occurred at the split second he received the injury in the automobile accident. They explained that the movement in his legs after being admitted to the hospital was due to flexor spasms which was a natural phenomenon following paraplegia.

Dr. Rufino Gonzales, an orthopedist, testified that as a result of his x-ray studies he found that Sendejar had received a severe injury to his spinal cord in the automobile accident and that the nature of the injury to his spinal cord would ordinarily result in death. He testified that the injury received

in the automobile accident made paraplegia inevitable and, in his opinion, even if surgery had been performed at 8:00 a. m. Sunday morning that the patient would have still been paralyzed as a result of the injuries to his spinal cord caused by the automobile accident.

All medical witnesses agreed that the spinal injury was not readily detectable on the x-ray picture taken by Dr. Halverson and that any physician situated as Dr. Halverson had been at that time would not be expected to detect the injury from reading the x-ray pictures especially in view of the fact that the patient did not complain of back pains. All medical witnesses who testified on the subject testified that Dr. Halverson did all that he could have done under the circumstances. There was no medical testimony that Dr. Halverson failed to exercise the proper standard of care in his examination and treatment of the patient.

■■ After weighing and balancing all of the foregoing testimony, as well as all of the evidence in the record, we find that we cannot agree with appellant's contention that the findings to Special Issues Nos. 2 and 3 are against the overwhelming weight and preponderance of the evidence. Points eleven and twelve are therefore overruled.

Special Issues 1 through 3 constitute the only primary negligence issues relied on by appellant to establish a cause of action against appellees. Having failed to obtain favorable findings on the primary negligence issues, it follows that appellant failed to establish a cause of action against either the hospital or Dr. Halverson and the judgment must be sustained unless reversible error is raised by the remaining points of error.

Under the first through tenth points of error the appellant contends that the trial court erred in permitting the appellees to plead, prove and submit to the jury the defense of contributory negligence. In response to Special Issues Nos. 5 and 6, the jury found that Jose Sendejar, Jr., failed to use ordinary care in the operation of his automobile and that such failure was a proximate cause of his injury. Appellant

argues that under the facts presented here the defense of contributory negligence should not have been submitted to the jury because the negligence of Sendejar in sustaining a previous injury would not constitute a defense to his claim for malpractice. We agree with this contention.

■ To constitute a bar to a suit for malpractice, the contributory negligence of the patient must have been an active and efficient contributing cause of the injury made the basis of the patient's claim; it must have been simultaneous and co-operating with the alleged fault of the defendant, must have entered into the creation of the cause of action and must have been an element in the transaction which constituted it. *Lee v. Moore*, 162 S.W. 437 (Tex.Civ. App.—Dallas 1913) rev'd on other grounds, 109 Tex. 391, 211 S.W. 214 (1919); see 61 Am.Jur.2d Physicians and Surgeons, etc., sec. 108; see also 50 A.L.R.2d 1043.

■ In the instant case there is nothing to suggest that Sendejar was guilty of any type of negligence occurring simultaneously with or co-operating with the alleged fault of the appellees. Furthermore, there is nothing in the evidence to suggest that after being admitted to the emergency room of the hospital, Sendejar committed any negligent act which could be construed as a contributing cause to his claim for malpractice asserted against the appellees. Consequently, under the facts here the defense of contributory negligence was not applicable and should not have been submitted to the jury.

■ This brings us to the question of whether appellant suffered harm as a result of the submission of such issues to the jury. It has long been the rule in this state that where the jury answers all issues relating to primary negligence in favor of the defendants, as here, any error in the manner in submitting issues as to the contributory negligence of the plaintiff is immaterial. In the instant case, no other judgment than the one in favor of the appellees could have been rendered by the trial court on the verdict and the error of which the appellees

complain was therefore immaterial and harmless. *Brown & Root v. Haddad*, 142 Tex. 624, 180 S.W.2d 339, 342 (1944); *Hammon v. Texas & N. O. Ry.*, 382 S.W.2d 155 (Tex.Civ.App.—Tyler 1964, writ ref'd n. r. e.); *Smith v. Morgan*, 235 S.W.2d 938 (Tex. Civ.App.—San Antonio 1950, writ dism'd). Appellant's points one through ten are overruled.

Under points fourteen through seventeen appellant urges that the trial court erred in entering judgment based on the jury's findings to Special Issues Nos. 11, 12, 13 and 14 wherein the jury found that the appellant sustained no damages. The basis of appellant's attack on the judgment in this regard is that the findings of the jury that the appellant suffered no damages are against the great weight and preponderance of the evidence.

The question of damages was submitted to the jury by four special issues covering past and future medical expenses as well as compensatory damages. Following each issue, the court instructed the jury as follows:

> "Do not include any amount for any condition existing before the hospitalization of Jose Sendejar, Jr., on May 15, 1971, except to the extent that you find from a preponderance of the evidence that such condition was aggravated by the defendants, or either of them, if you have so found."

■■■■ Under the foregoing instruction given by the court, we cannot agree with appellant's contention that the finding of "no damages" is contrary to the overwhelming weight and preponderance of the evidence. However, even if we so found, this would not call for a reversal of the judgment because of the findings by the jury that neither of the appellees was guilty of negligence proximately causing Sendejar's paraplegia. In view of those findings the jury's answers to the damage issues were rendered immaterial and as such would not show prejudicial harm. *Southern Pine Lumber Co. v. Andrade*, 132 Tex. 372, 124 S.W.2d 334 (1939); *Seeley v. Eaton*, 506 S.W.2d 719 (Tex.Civ.App.—Houston [14th Dist.] 1974, writ ref'd n. r. e.); *Martin v. Crow*, 372 S.W.2d 724 (Tex.Civ.App.—Texarkana 1963, no writ).

Appellant next contends that the trial court erred in excusing certain jurors who, prior to trial, had rendered excuses to the Sheriff, District Clerk and other officials in violation of Article 2120, Tex.Rev.Civ.Stat. Ann.

The record reveals that prior to trial appellant was furnished a list showing that 44 jurors out of a panel of approximately 200 had been excused prior to the trial and were not present in the courtroom at that time. Appellant made no complaint prior to trial and complained for the first time in his motion for new trial.

■■■■ Under the statute regulating excuses of jurors, neither the District Clerk, Sheriff nor any other official is authorized to excuse jurors. Such power is conferred solely upon the court. To force a litigant, over his objection, to proceed to trial where prospective jurors have been excused contrary to the statute would no doubt constitute reversible error. *Texas & N. O. Ry. v. Jacks*, 306 S.W.2d 790 (Tex.Civ.App.—Beaumont 1957, writ ref'd n. r. e.); *Ulmer v. Mackey*, 242 S.W.2d 679 (Tex.Civ.App.—Forth Worth, 1951, writ ref'd n. r. e.). In order for the error to constitute reversible error, however, appellant had a duty to register some complaint prior to the time that the jury was selected. Having registered no objection and having filed no motion to quash the jury panel, we think appellant waived his right to complain. Rule 434, Tex.R.Civ.P.; *Hartford Accident & Indem. Co. v. Haddock*, 511 S.W.2d 102 (Tex. Civ.App.—Tyler 1974, writ ref'd n. r. e.); *Texas & N. O. Ry. v. Jacks*, supra. Appellant's eighteenth and nineteenth points are overruled.

In his twentieth and twenty-first points appellant contends that the trial court erred in submitting Special Issue No. 10 to the jury because said issue was an inferential rebuttal issue which was not properly submitted under Rule 277 of the Texas Rules of Civil Procedure. By this issue the jury

was requested to find whether the paraplegia of Jose Sendejar, Jr., and the injuries and damages resulting therefrom were solely caused by the injuries received by him at the time of the automobile accident. The jury found "They were." [3]

■ "Sole cause" and "sole proximate cause" issues constitute inferential rebuttal issues, and as such are no longer submitted to the jury. *McCane Sondock Detective Agency v. Penland Distributors, Inc.*, 523 S.W.2d 62 (Tex.Civ.App.—Houston [14th Dist.] 1975, no writ history). Rule 277, supra, specifically provides "Inferential rebuttal issues shall not be submitted." The issue should not have been submitted. Thus, the question becomes whether the submission of the issue resulted in harm to appellant. Rule 434, supra. We have concluded that it did not. Appellant argues that, since the undisputed testimony shows that the jury answered Special Issue No. 10 before refusing to find that the negligence of the hospital was a proximate cause of Sendejar's paraplegia (Special Issue No. 2), the giving of Special Issue No. 10, together with the instructions given in connection therewith, caused the jury to believe that a negative answer to Special Issue No. 2 was required in order to make the two causation findings consistent. We cannot agree with this reasoning.

No juror testified that Special Issue No. 2 was answered in the negative solely for the purpose of consistency. To hold that the jury probably arrived at a negative answer to Special Issue No. 2 because they probably believed that if they did not do so, then their answer would conflict with their answer to Special Issue No. 10, would be highly speculative and unwarranted. The jury was at liberty to answer Special Issue No. 2 either in the affirmative or in the negative based on what they found the facts to be even though it would result in a conflict. In the absence of any showing that the jury made a negative finding on Special Issue

No. 2 for some ulterior reason, we must assume that the jury followed the court's instruction and based its answer solely on the evidence.

■ In any event, since the controlling special issues relating to appellees' alleged primary negligence and liability were answered by the jury in favor of appellees, any error in the manner of submitting other special issues and definitions, such as those of which appellant complains herein, becomes immaterial and harmless. *Brown & Root v. Haddad*, supra; *Henry v. American Airlines, Inc.*, 413 S.W.2d 123, 128–129 (Tex.Civ.App.—Eastland 1967, no writ). After a careful review of the entire record, we do not believe that the submission of Special Issue No. 10, even though improper, was calculated to cause and probably did cause a rendition of an improper judgment. Rule 434, supra.

Matters relating to jury misconduct are made the basis of points twenty-two through twenty-six. The misconduct complained of consists of statements made by the jurors during jury deliberation. Upon the hearing on the motion for new trial, it was shown that some of the jurors made the following statements: (1) this type of case against hospitals causes insurance rates to go up; (2) if hospitals and doctors were sued by everyone then there would be no hospitals or doctors when needed; and (3) that this type of case against hospitals makes our hospital rates go up.

■ The undisputed evidence shows that none of the foregoing statements were made prior to the time the jury answered Special Issue No. 3 in which the jury refused to find negligence on the part of Dr. Halverson. Therefore, since the alleged misconduct occurred after Dr. Halverson had been exonerated from liability, we fail to see how any harm could have resulted to appellant by reason of such alleged misconduct insofar as it relates to the cause of

---

3. "ISSUE NO. 10:

Do you find from a preponderance of the evidence that the paraplegia of Jose Sendejar, Jr., and the injuries and damages resulting

therefrom was solely caused by the injuries received by him at the time of the automobile accident which he had on May 15, 1971? ANSWER: They were."

action alleged against Dr. Halverson. The point in time during jury deliberations at which misconduct occurs is an important factor in determining the probability of harm. *Fountain v. Ferguson*, 441 S.W.2d 506 (Tex.1969); *Mrs. Baird's Bread Co. v. Hearn*, 157 Tex. 159, 300 S.W.2d 646 (1957). Consequently, we hold that the alleged misconduct could not have had any effect on the jury's answer to Special Issue No. 3 and therefore no harm could have resulted to the appellant with respect to his cause of action against Dr. Halverson.

With regard to the hospital, the record shows that the jury experienced difficulty in answering Special Issue No. 1. The jury then answered other issues before returning to Special Issue No. 1. The evidence shows that the alleged misconduct occurred before the jury had answered Special Issues Nos. 1 and 2 relating to whether the hospital was negligent and whether such negligence was a proximate cause of Sendejar's paraplegia. Since Special Issue No. 1 was answered in appellant's favor, no harm could have resulted to appellant with regard to that issue. Consequently the only issue to which the alleged misconduct could have possibly been harmful was the proximate cause issue.

Appellant argues that the statements made during the jury's deliberation were calculated to prejudice the jury against all malpractice suits. Therefore, he argues that the statements probably caused the the jury to answer the proximate cause issue against him solely because they were prejudiced against malpractice claims. We are not in accord with this contention. Had the jury been motivated by prejudice against malpractice suits, as appellant contends, it occurs to us that the jury would have also answered the negligence issue adversely to the appellant. Since the jury answered the negligence issue in appellant's favor but answered the proximate cause issue in the hospital's favor, we think the more logical deduction would be that the jury made a good-faith effort to answer each issue according to the evidence. The causation issue was sharply contested and the jury was

well aware of this fact. According to the testimony adduced on the hearing for new trial, the remarks complained of were briefly mentioned by only one or two jurors. The foreman testified there was no prolonged discussion of any of the remarks. None of the remarks appear to have had any direct relationship to the issue of causation and for this reason it is difficult to understand how they could have influenced the jury in answering the issue. In view of the fact that the jury answered the negligence issue in favor of appellant, it is difficult to believe that the jury's adverse finding on the proximate cause issue was reached solely because of the jury's prejudice against the appellant's claim.

Whether the alleged jury misconduct probably resulted in harm to the complaining party is a question of law for the reviewing court after considering the record as a whole. *Barrington v. Duncan*, 140 Tex. 510, 169 S.W.2d 462 (1943); *Lackey v. Moffett*, 172 S.W.2d 715 (Tex.Civ.App.— Fort Worth 1943, no writ).

To say that the alleged jury misconduct in this instance probably caused the rendition of an improper judgment, we would first be compelled to conclude from the record as a whole that but for the alleged misconduct the jury would probably have answered the proximate cause issue in such a fashion as to impose liability on the hospital. It is not enough to say that the jury might possibly have done so. *Condra Funeral Home v. Rollin*, 158 Tex. 478, 314 S.W.2d 277 (1958); *Aultman v. Dallas Ry. & Term. Co.*, 152 Tex. 509, 260 S.W.2d 596, 600 (1953). After a careful review of the entire record, we do not believe we would be justified in concluding that but for the alleged jury misconduct the jury would have probably answered the issue in a manner favorable to appellant. Rule 434, supra.

Appellant further contends that jury misconduct was established because it was brought out during the deliberations that Sendejar had been drinking at the time of the automobile accident and also that Dr. J. C. Gonzales should have been sued rather

than Dr. Halverson and the hospital. There is some indication in the record that Dr. J. C. Gonzales should have been available to treat the patient or should have notified the hospital as to which doctor would cover for him. Also there is evidence that Sendejar, Jr., had been drinking. It is not error for the jury to discuss the evidence and reasonable deductions therefrom. *International-Great Northern R. R. v. Smith,* 269 S.W. 886 (Tex.Civ.App.—San Antonio 1925, writ dism'd). Points twenty-two through twenty-six are overruled.

 While the trial court probably committed several errors in the course of the lengthy trial, we do not believe such erroneous rulings were of such gravity that any of them, either singularly or collectively, were calculated to cause and probably did cause the rendition of an improper judgment. Rule 434, supra. Appellant's points twenty-seven and twenty-eight are overruled.

Finding no reversible error the judgment of the trial court is affirmed.

### ON MOTION FOR REHEARING

On Motion for Rehearing counsel for appellant challenges our original opinion wherein we stated he was furnished a jury list showing that 44 jurors out of the panel of 200 had been excused. After a review of the supplemental transcripts subsequently filed by the parties, it now appears that although appellant's counsel was furnished a list of the 200 jurors, the list did not indicate that any of the jurors had been previously excused. It appears that the excused jurors were shown on the juror's time book kept by the District Clerk which list was used by him in calling the names of the jurors prior to voir dire examination. The record reveals that when the District Clerk called his list he did not call the names of the 44 jurors who had been previously excused. It thus appears that even though counsel did not have a list showing the excused jurors, he knew or should have known that 44 jurors were absent and unaccounted for and he made no complaint thereof.

With this explanation, we adhere to our previous ruling holding that appellant waived his right to complain. In any event the error, if any, could not have resulted in any harm to appellant in the absence of a showing by him that he was compelled to try his case before an objectionable juror. Rule 434, supra; *Palestine Contractors, Inc. v. Perkins,* 386 S.W.2d 764 (Tex.1964); *City of Hawkins, v. E. B. Germany and Sons,* 425 S.W.2d 23 (Tex.Civ.App.—Tyler 1968, writ ref'd n. r. e.). Accordingly the Motion for Rehearing is overruled.