**James E. ELBAOR, M.D., Appellant,**

v.

**Carole Mercer SMITH, Appellee.**

**No. 2–90–027–CV.**

Court of Appeals of Texas,
Fort Worth.

April 10, 1991.

Shannon, Gracey, Ratliff & Miller, and John Hill Cayce, Jr., E. Earl Harcrow, and D. Robert Jones, Fort Worth, for appellant.

Dixie & Mauzy, and George C. Dixie, Aglaia D. Mauzy, and Calvin B. Almquist, Dallas, for appellee.

Before FARRIS, LATTIMORE and MEYERS, JJ.

## OPINION

FARRIS, Justice.

Smith filed a medical malpractice suit against six defendants, voluntarily dismissed two, entered into Mary Carter Agreements with three, and after a favorable jury verdict, was granted a judgment for $1,872,848.62 against the remaining defendant, Elbaor. Elbaor raises three points on appeal: the court erred in overruling his motion to dismiss the settling defendants because Mary Carter Agreements are against public policy, the evidence is factually insufficient to sustain the jury finding that he was eighty-eight percent liable for Smith's injury and his co-defendant, Dr. Syrquin, was only twelve percent liable, and the court erred in failing to submit Smith's negligence to the jury. We overrule each of Elbaor's points of error and affirm the judgment of the trial court.

We would have to declare Mary Carter Agreements void as against public policy to sustain Elbaor's first point. Elbaor argues, forcefully, that the agreements are controversial, pointing to the numerous critics of their use; however, whether the agreements should be declared void is an issue which we hold, in agreement with one of our sister courts, requires resolution by the supreme court. *See Stein v. American Residential Management,* 781 S.W.2d 385, 389 (Tex.App.—Houston [14th Dist.] 1989), *writ denied per curiam,* 793 S.W.2d 1 (Tex.1990). We decline to ignore the authorities which either expressly or impliedly recognize the legitimacy of Mary Carter Agreements and overrule the first point.

We overrule Elbaor's second point of error because it urges us to do what we may not, substitute our judgment for that of the jury in evaluating the credibility of contradictory testimony. In his second point, Elbaor complains the evidence was insufficient to support the jury finding that eighty-eight percent of the negligence causing Smith's injury was his, while the finding that only twelve percent of the negligence could be attributed to Syrquin was against the great weight and preponderance of the evidence. In his argument under this point, Elbaor points out the evidence relevant to apportioning negligence comes primarily from the opinion testimony of seven doctors: five of the seven stated an opinion that Syrquin was negligent, one stated Syrquin was not negligent, three were of the opinion Elbaor was negligent, and two testified he was not negligent. Eleven doctors in all testified including Elbaor and others who had been defendants in the case. Some of the doctors were reluctant to give any opinion as to a colleague's negligence or the exercise of proper care. Some of the doctors who testified had treated Smith while others were called in order to give expert medical testimony for one side or the other. Some testified live, others by deposition. The expert medical testimony totaled several hundred pages. Needless to say, the experts did not concur on any material issue.

Elbaor argues the jury's apportionment of negligence contributing to Smith's injury reflects a prejudice caused by the settling defendants ganging up on him in cooperation with Smith. To the extent this argument relates to his first point, we shall defer to the supreme court. To the extent Elbaor argues the jury finding was factually insufficient or so against the great weight and preponderance as to clearly demonstrate bias, we disagree. It was the responsibility of the jury to hear the testimony of the various experts and determine their credibility and there is nothing in the record which persuades us the jury did not fairly consider the admissible evidence in arriving at its verdict. We cannot say the contrary evidence greatly outweighs that in support of the verdict and overrule Elbaor's second point. *See Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex.1986).

■ In point three Elbaor complains the trial court erred in not submitting the issue of Smith's negligence along with his own negligence and that of Syrquin in the jury questions submitting issues of the two doctors' negligence, proximate cause, and the apportionment of damages. Elbaor argues evidence that Smith continued smoking and on some occasions refused to take antibiotics together with testimony of possible medical consequences of such conduct required the submission of Smith's negligence. We disagree because the evidence cited by Elbaor only entitled him to the instruction on Smith's failure to mitigate her damages which was included with the question of damages and was not evidence of contributory negligence.

Smith's smoking and refusing to take antibiotics was not conduct which would require the submission of her negligence because neither activity occurred simultaneously and cooperated with the alleged fault of Elbaor and Syrquin. *See Sendejar v. Alice Physicians & Surgeons Hosp.*, 555 S.W.2d 879, 885 (Tex.Civ.App.—Tyler 1977, writ ref'd n.r.e.). Smith's conduct, if negligence, was the sort which increases or adds to the extent of injury rather than that having a causal connection with the negligence causing injury. *See Kerby v. Abi-*

*lene Christian College*, 503 S.W.2d 526, 528 (Tex.1973). The trial court properly charged the jury that in determining damages it should not include any amount for any condition resulting from the failure of Smith to act as a person of ordinary prudence in caring for herself and cooperating in the treatment of her injuries. *See Moulton v. Alamo Ambulance Serv.*, 414 S.W.2d 444, 450 (Tex.1967). Point three is overruled.

The judgment of the trial court is affirmed.