

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-09-00314-CV

DONALD JOE BISHOP AND
CAROLYN BISHOP

APPELLANTS

V.

A.B. AUTO SALVAGE, STEVEN
SCOTT HARCOURT, A.B.'S USED
AUTO AND TRUCK PARTS, INC.,
JESSE SMALL, LTD., JESSE
SMALL, A.B. FORD, A.B. CHEVY,
A.B.'S FORD AND A.B.'S
CHEVROLET

APPELLEES

----------

## FROM THE 96TH DISTRICT COURT OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

Appellants Carolyn Bishop and Donald Joe Bishop ("Joe") appeal from the

trial court's take nothing judgment on their claims against Appellees A.B. Auto

---

[1]*See* Tex. R. App. P. 47.4.

Salvage; Steven Scott Harcourt; A.B.'s Used Auto and Truck Parts, Inc.; Jesse Small, Ltd.; Jesse Small; A.B. Ford; A.B. Chevy; A.B.'s Ford; and A.B.'s Chevrolet.  The Bishops bring seven issues on appeal.  Because we hold that we must presume that the omitted portions of the reporter's record support the trial court's judgment, we affirm.

The Bishops sued Appellees for assault, negligence, intentional infliction of emotional distress, and failure to warn, based on an altercation at A.B. Auto Salvage, a salvage yard owned by Small and managed by Harcourt.  On September 10, 2005, the Bishops went to the salvage yard so that Joe could return a bell housing he had purchased there.  While Carolyn sat in the waiting area, Harcourt and Joe went to the back of the shop.  Harcourt and Joe engaged in a heated disagreement over the bell housing, which escalated when Harcourt threw the bell housing.

At trial, the Bishops contended that Harcourt threw the bell housing at Joe, while Appellees asserted that he threw the bell housing at the floor, and it bounced off the concrete floor and hit Joe's ankle.  Joe testified that salvage yard employees then physically attacked him; Appellees, on the other hand, asserted that Joe struck Harcourt in the face in response to Harcourt's throwing of the bell housing.  The Bishops contended that Joe was beaten so severely that his heart stopped beating, and only his pacemaker's defibrillator brought him back to life.  Appellees said that Joe and Harcourt "grappled," Harcourt fell over backwards causing Joe to fall on top of him, and Joe passed out.

2

After close of evidence in the jury trial, the trial court granted a directed verdict for Small on all claims against Small individually and for all Appellees except Harcourt on the Bishops' other claims. The jury then found that Harcourt did not commit an assault that proximately caused Joe's injuries. The jury also found that Harcourt and Joe were both negligent, attributing thirty percent of the negligence to Harcourt and seventy percent to Joe. The trial court's judgment ordered that the Bishops take nothing on their claims. After the trial court denied the Bishops' motion for new trial, they filed this appeal.

In the Bishops' first issue, they assert that the trial court erred by submitting jury question number one, which departed from the pattern jury charge. In their second issue, the Bishops argue that the trial court erred by making a docket entry indicating that they had nonsuited their claims against A.B. Auto Salvage. They complain that by making this docket entry, the trial court improperly dismissed their claim against A.B. Auto Salvage. In their third issue, the Bishops argue that jury misconduct and a "circus atmosphere" at trial require a new trial.

The Bishops' next three issues relate to evidentiary rulings by the trial court. In their fourth issue, the Bishops argue that the trial court erred by permitting the testimony of Ruben Garcia because he had not been disclosed as a witness and by permitting Garcia to sponsor and testify about certain documents. In their fifth issue, the Bishops contend that the trial court erred by suppressing and refusing to admit certain impeachment evidence against Jesse

3

Small.  In the Bishops' sixth issue, they argue that the trial court erred by refusing to admit evidence of what they contend is a "Mary Carter type agreement" among Appellees.  In their seventh and final issue, the Bishops assert that the cumulative error in this case so fundamentally flawed the trial process as to require a new trial.

Appellees filed briefs addressing the merits of the Bishops' issues and also pointing out that the Bishops requested only a partial reporter's record but did not file a statement of points or issues that they would present on appeal.[2]  Under appellate procedure rule 34.6, in requesting the court reporter to prepare the reporter's record, the appellant must designate the portions of the proceedings to be included.[3]  If an appellant requests only part of the reporter's record, "the appellant must include in the request a statement of the points or issues to be presented on appeal," and the appellant "will then be limited to those points or issues."[4]  Requiring a statement of points or issues gives the appellee notice of the issues being appealed so that the appellee can designate additional parts of the record that may be necessary to support its defense.[5]  Without a specific

---

[2]*See* Tex. R. App. P. 34.6(c)(1).

[3]Tex. R. App. P. 34.6(b)(1).

[4]Tex. R. App. P. 34.6(c)(1).

[5]*W & F Transp., Inc. v. Wilhelm*, 208 S.W.3d 32, 38 (Tex. App.—Houston [14th Dist.] 2006, no pet.).

statement of points or issues, the appellee is "left to guess which additional portions of the evidence should be included in the statement of facts."[6]

When the appellant complies with the rule, "[t]he appellate court must presume that the partial reporter's record designated by the parties constitutes the entire record for purposes of reviewing the stated points or issues."[7] But when the reporter's record is necessary to the appeal[8] and the appellant requests only a partial record but never submits a statement of points or issues, we must presume that the omitted portion of the record supports the trial court's judgment.[9] This result "ordinarily has the practical effect of destroying an appellant's right to appeal."[10]

---

[6]*Id.* (quoting *Gardner v. Baker & Botts, L.L.P.*, 6 S.W.3d 295, 297 (Tex. App.—Houston [1st Dist.] 1999, pet. denied)).

[7]Tex. R. App. P. 34.6(c)(4).

[8]*See Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 782 (Tex. 2005) (stating that a reporter's record is required only for proceedings in which evidence is introduced and that "for nonevidentiary hearings, it is superfluous").

[9]*CMM Grain Co. v. Ozgunduz*, 991 S.W.2d 437, 439–40 (Tex. App.—Fort Worth 1999, no pet.); *see also Bennett v. Cochran*, 96 S.W.3d 227, 229 (Tex. 2002) (allowing consideration of the merits of Bennett's claim when he requested a partial record and filed his statement of points almost two months late but stating that "[t]here is no question that, had Bennett completely failed to submit his statement of points or issues, Rule 34.6 would require the appellate court to affirm the trial court's judgment").

[10]*Wilhelm*, 208 S.W.3d at 38.

The Bishops did not file a statement of points in this case and did not request a complete reporter's record until after Appellees had filed their briefs; this court denied that untimely request.[11]  With only a partial record in this case, and without the application of the presumption in rule 34.6(c)(4), we cannot determine, for example, whether any error in the jury charge was harmful;[12] whether there was jury misconduct or a "circus atmosphere" at trial and, if so, whether it harmed the Bishops;[13] whether the Bishops preserved their objection to the testimony of Garcia, and if they did, whether any error was harmful; whether the trial court erred by excluding the impeachment evidence against Small and whether the exclusion was harmful; whether the defendants made an

---

[11]*See Mason v. Our Lady Star of Sea Catholic Church*, 154 S.W.3d 816, 818–21 (Tex. App.—Houston [14th Dist.] 2005, no pet.) (denying the appellant's motion to file a statement of points when the appellant ordered a partial reporter's record but did not attempt to file a statement of points until after the appellees pointed out her noncompliance with rule 34.6 in their brief, and affirming the trial court's judgment because without a complete record the court could not determine harm and because the court had to presume the omitted portions of the record supported the judgment).

[12]*See id.* at 821 (considering the appellant's complaint regarding jury charge error and observing that "[w]ithout a record, an appellate court is hobbled; it cannot perform its review of the record to assess for itself if error occurred and, if so, to assess whether the error was harmless or reversible").

[13]*See, e.g., Sendejar v. Alice Physicians & Surgeons Hosp., Inc.*, 555 S.W.2d 879, 888 (Tex. Civ. App.—Tyler 1977, writ ref'd n.r.e.) (stating that "[w]hether the alleged jury misconduct probably resulted in harm to the complaining party is a question of law for the reviewing court after considering the record as a whole").

agreement that distorted their positions at trial;[14] whether trial court's exclusion of the evidence of such an agreement was harmful; or whether there was cumulative error requiring a new trial.[15] Instead, we must presume that the parts of the record that were omitted support the trial court's judgment.[16]

Additionally, regarding the Bishops' second issue, the trial court's judgment specifically rendered judgment in favor of A.B. Auto Salvage (contradicting the Bishops' claim that the trial court erroneously nonsuited this defendant), and in any case, the Bishops cannot rely solely on a docket sheet entry to show that the trial court ordered a nonsuit.[17] Accordingly, we overrule each of the Bishops' issues.

---

[14]*See Elbaor v. Smith*, 845 S.W.2d 240, 249–50 (Tex. 1992) (noting that Mary Carter agreements distort the parties' positions at trial and skew the trial process).

[15]*See* Tex. R. App. P. 33.1 (requiring preservation of complaints on appeal); 44.1 (providing that no judgment may be reversed on appeal for trial court error unless the complained-of error probably caused the rendition of an improper judgment or probably prevented the appellant from properly presenting the case to the court of appeals); *see also Holten*, 168 S.W.3d at 783 (stating that if the proceeding was evidentiary, "then a complaining party must present a record of that hearing to establish harmful error").

[16]*CMM Grain Co.*, 991 S.W.2d at 439–40.

[17]*See Guyot v. Guyot*, 3 S.W.3d 243, 247 (Tex. App.—Fort Worth 1999, no pet.) (stating that when the only evidence of a trial court's order or judgment is found in a docket sheet, "the docket sheet cannot be used to show the existence of an order or judgment"); *see also Dardas v. Fleming, Hovenkamp & Grayson, P.C.*, 194 S.W.3d 603, 610 n.2 (Tex. App.—Houston [14th Dist.] 2006, pet. denied) ("Although a docket entry by the trial court indicates Dardas and Ogletree nonsuited these claims, our record does not contain any instrument nonsuiting claims, and a docket entry is not sufficient to nonsuit the claims.").

Having overruled the Bishops' issues, we affirm the trial court's judgment.


LEE ANN DAUPHINOT
JUSTICE

PANEL:  DAUPHINOT and MCCOY, JJ.; and CHARLES BLEIL (Senior Justice, Retired, Sitting by Assignment).

DELIVERED:  December 1, 2011